UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

YURMAN STUDIO, INC. and YURMAN : 
DESIGN, INC., :
                        :

        **Plaintiffs,**       :

       - against -      :

ELENA CASTANEDA and EJEWELER : 
LLC d/b/a :
OVERSTOCKJEWELER.COM, :
                        :

        **Defendants.**    :

-------------------------------------------------- X
-------------------------------------------------- X

CARTIER, a division of : 
RICHEMONT NORTH AMERICA, : 
INC., CARTIER INTERNATIONAL, : 
N.V., CARTIER CREATION STUDIO, : 
S.A., VAN CLEEF & ARPELS S.A., : 
VAN CLEEF & ARPELS, INC., VAN : 
CLEEF & ARPELS DISTRIBUTION, : 
INC., GUCCI AMERICA, INC., and : 
BULGARI S.p.A., :
                        :

        **Plaintiffs,**      :

       - against -      :

ELENA CASTANEDA and EJEWELER : 
LLC d/b/a :
OVERSTOCKJEWELER.COM, :

        **Defendants.**    :

-------------------------------------------------- X

**OPINION AND ORDER**

07 Civ. 1241 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/19/08

07 Civ. 7862 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Yurman Studio, Inc., Yurman Design, Inc. (collectively, "Yurman"),
Cartier, a division of Richemont North America, Inc., Cartier International, N.V.,
Cartier Creation Studio, S.A. (collectively, "Cartier"), Gucci America, Inc.
("Gucci"), and Bulgari S.p.A. ("Bulgari") (collectively, "plaintiffs") move for
partial summary judgment against Ejeweler LLC and Elena Castaneda
(collectively "defendants") with respect to all issues of liability and damages
relating to certain of their claims for infringement of trademarks, copyrights and
design patents involving nearly one hundred individual jewelry pieces sold by
defendants.  Additionally, Yurman seeks summary judgment dismissing
defendants' counterclaim on the cancellation of Yurman's copyrights.

Defendants, in turn, move for partial summary judgment with respect
to certain of plaintiffs' claims for copyright, trademark, and trade dress
infringement, false designation of origin, New York and federal trademark
dilution, and common law unfair competition, false advertising, and deceptive
trade practices and  willful infringement.  For the reasons that follow, the parties'
respective motions for summary judgment are granted in part and denied in part.

## II.    BACKGROUND

2

## A. Facts[1]

Since 2004, defendants, through their website

http://www.overstockjeweler.com ("Overstock website"), have been offering for

sale and selling "designer knock-off Jewelry" and "reproductions or replicas of

popular designs."[2] Plaintiffs are designers and suppliers of high-end jewelry and

luxury watches.[3] Numerous jewelry items and watches offered for sale on the

Overstock website are advertised as replicas of, or inspired by, the jewelry designs

of Yurman, Cartier, Gucci and Bulgari.[4]

Plaintiffs possess intellectual property rights, including registered

copyrights, design patents, and trademarks, in the jewelry designs in dispute.

---

[1]      The following facts are undisputed and are taken from Plaintiffs'
Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.
56.1"), Defendants' Statement Pursuant to Local Rule 56.1 ("Def. 56.1"),
Defendants' Counterstatement of Additional Material Facts, and Plaintiffs'
Response to Defendants' Counterstatement.  For facts that provide background,
cannot reasonably be in dispute, and are not material to these motions, the Court
draws from Plaintiffs' Complaint ("Compl.") and the parties' submissions with
respect to this motion.

[2]      Pl. 56.1¶ 11.

[3]      See Def. 56.1 ¶¶ 15, 19, 24, 28.

[4]      See id. ¶ 3. In addition, defendants' designs allegedly infringe upon
the intellectual property rights of non-moving parties Van Cleef & Arpels, Inc.,
Van Cleef & Arpels Distribution, Inc., and Van Cleef & Arpels, S.A. (collectively,
"Van Cleef & Arpels").

Yurman owns twelve copyright registrations, covering both individual jewelry

designs and jewelry collections, that form the basis of its claims against

defendants.[5] In addition, Yurman owns a patent in an ornamental design for a

watch bracelet.[6] Cartier has registered trademarks for seven different designs

featured in its jewelry.[7] It also has been issued patents for four ornamental jewelry

designs, and owns a copyright registration for its "Agrafe" bracelet design.[8] Gucci

has registered two recent jewelry collections, its Fall/Winter 2005 Jewelry

Collection and its Spring/Summer 2007 Jewelry Collection, with the United States

Copyright Office.[9] Gucci also has a registered trademark in its stylized letter "G"

design used in watches and clocks.[10] Finally, Bulgari has obtained patents on

three ornamental jewelry designs.[11]

## B. Procedural History

On February 16, 2007, Yurman filed suit against defendants, asserting

---

5       *See id.* ¶ 31.

6       *See id.* ¶ 32.

7       *See id.* ¶ 34.

8       *See id.* ¶¶ 36-37.

9       *See id.* ¶ 39.

10      *See id.* ¶ 40.

11      *See id.* ¶ 42.

4

claims for copyright, trade dress, design patent, and trademark infringement, as well as claims for false designation of origin, unfair competition, and deceptive trade practices.[12] On April 26, 2007, defendants brought a counterclaim for cancellation of certain of the Yurman copyrights, alleging the designs are not sufficiently original to warrant protection under copyright law. On September 6, 2007, Cartier, Van Cleef & Arpels, Gucci, and Bulgari filed a separate complaint against Castaneda asserting the same claims as Yurman. With the consent of the parties, the Court consolidated the two actions.

Plaintiffs, with the exception of Van Cleef & Arpels, moved for partial summary judgment on June 13, 2008. Yurman, Cartier and Gucci argue that they are entitled to summary judgment on their claims for willful copyright infringement. Cartier and Gucci argue that they are entitled to summary judgment on their trademark design infringement claims, because defendants have counterfeited their design trademarks. Finally, Yurman, Cartier and Bulgari argue that they are entitled to summary judgment on their claims for design patent infringement.

---

[12] *See* Complaint, Yurman Studio, Inc. v. Elena Castaneda d/b/a Overstockjeweler.com.

5

Defendants moved for partial summary judgment on June 14, 2008.

Defendants argue that certain of Yurman, Bulgari, Gucci, Cartier and Van Cleef's copyright registrations are invalid, and therefore the claims for infringement of these copyrights must be dismissed. Defendants also argue that their use of plaintiffs' brand name trademarks constitutes nominative fair use, and that, in the alternative, plaintiffs have not established a prima facie case of trademark infringement. In addition, defendants argue that plaintiffs are unable to establish that any infringement was willful. Finally, defendants argue that plaintiffs cannot establish their false advertising or deceptive trade practices claims as a matter of law.

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the

---

[13]   Fed. R. Civ. P. 56(c).

6

nonmoving party.'"[14] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[15] "It is the movant's burden to show that no genuine factual dispute exists."[16]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, it must do more than show that there is "'some metaphysical doubt as to the material facts,'"[17] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[18] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[19]

---

[14] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[15] *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

[16] *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[17] *Higazy*, 505 F.3d at 169 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[18] *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[19] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in that party's favor.[20] However, "[i]t is a

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[21] Summary judgment is therefore

inappropriate "'if there is any evidence in the record that could reasonably support

a jury's verdict for the non-moving party.'"[22]

## B. Copyright Infringement

"Copyright protection subsists . . . in original works of authorship

fixed in any tangible medium of expression . . . from which they can be perceived,

reproduced, or otherwise communicated . . . ."[23] To prevail on a claim of

---

[20]    *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d
450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305,
312 (2d Cir. 1997)).

[21]    *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50,
55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[22]    *American Home Assurance Co. v. Hapag Lloyd Container Linie,
GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (quoting *Marvel Characters, Inc. v.
Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

[23]    17 U.S.C. § 102(a).

8

copyright infringement under the Copyright Act of 1976,[24] a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original."[25]

## 1.    Ownership of a Valid Copyright

The validity of a copyright depends upon its originality.[26] The Supreme Court held that originality "does not signify novelty" and indeed, "a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying."[27] Rather, originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."[28] This level of creativity is "extremely low," with "the vast majority of works mak[ing] the grade quite easily" as long as they possess "some creative spark, no matter how crude, humble or obvious."[29] "Copyright law may protect a

---

[24]    *See id.* § 101 *et seq.*

[25]    *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

[26]    *See Yurman Design, Inc. v. PAJ, Inc. ("PAJ, Inc.")*, 262 F.3d 101, 109 (2d Cir. 2001) (citing *Feist*, 499 U.S. at 345-47; U.S. Const. art. I, § 8, cl. 8).

[27]    *Feist*, 499 U.S. at 345.

[28]    *Id.* (citation omitted).

[29]    *Id.* (quotation marks omitted).

9

combination of elements that are unoriginal in themselves."[30]  With respect to

compilations of facts, for example, protection extends to choices of "selection and

arrangement, so long as they are made independently by the compiler and entail a

minimal degree of creativity."[31]  This Court has previously observed that "in cases

involving design, [] it is difficult to discern when a combination of unoriginal

component parts is itself original so as to merit copyright protection."[32]

               Collections of works may be registered as a "single work" authorized

under 37 C.F.R. § 202.3(b)(4)(A) which "codified the pre-existing Copyright

Office practice of allowing copyright owners to register multiple works published

together as a single work for a single fee."[33]  A single work is defined as "all

copyrightable elements that are otherwise recognizable as self-contained works,

that are included in a single unit of publication, and in which the copyright

claimant is the same."[34]  A single work registration for a collection of published

---

[30]    *PAJ, Inc.*, 262 F.3d at 109-110.

[31]    *Feist*, 499 U.S. at 348.

[32]    *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F. Supp. 2d
525, 529 (S.D.N.Y. 2000).

[33]    *Kay Berry v. Taylor Gifts, Inc.*, 421 F.3d 199, 205 (3rd Cir. 2005)
(citing Registration of Claims to Copyright, 43 Fed. Reg. 965, 966 (Jan. 5, 1978)).

[34]    37 C.F.R. § 202.3(b)(4)(A).

10

works requires that "all of the self-contained works be 'included in a single unit of publication' and share the same copyright claimant."[35]

Where a plaintiff holds a certificate of copyright registration made before or within five years of the first publication of a work, the certificate constitutes prima facie evidence of the first element – *i.e.*, "the validity of the copyright and of the facts stated in the certificate."[36] Thus, the certificate of registration raises a rebuttable presumption that the work in question is copyrightable,[37] as well as original.[38] "Minor mistakes in a registration statement, made in good faith and unaccompanied by deceptive intent, will not serve to invalidate registration."[39] A plaintiff's "proffer of its certificate of copyright

---

[35]    *Kay Berry*, 421 F.3d at 205 (quoting 37 C.F.R. § 202.3(b)(4)(A)).

[36]    17 U.S.C. § 410(c).

[37]    *See M. Lady, LLC v. AJI, Inc.*, No. 06 Civ. 0194, 2007 WL 2728711, at *3 (S.D.N.Y. Sept. 19, 2007) (citing *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)).

[38]    *See Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001)).

[39]    *Greenwich Film Prods., S.A. v. DRG Records*, 833 F. Supp. 248, 252 (S.D.N.Y. 1993). *Accord Gund, Inc. v. Swank, Inc.*, 673 F. Supp. 1233, 1237 (S.D.N.Y. 1987); *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, No. 05 Civ. 711, 2007 WL 708798, at *5 (E.D.N.Y. Mar. 6, 2007) (citing Copyright Office Statement of Policy, 65 Fed. Reg. 41508-01, 2000 WL 872412 (Jul. 5, 2000)) ("A description of the physical form of the work [in visual arts forms, ("Forms VA")] is generally acceptable.").

11

registration thus shifts to [the defendant] the burden of proving the invalidity of the copyright [] and there the burden rests, unless the presumptions are rebutted."[40] The presumption of validity may be rebutted by "other evidence in the record [that] casts doubt on the question."[41]

### a. Works Made for Hire and the French Intellectual Property Code ("FIPC")

Under the Copyright Act, "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author . . . and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright."[42] "Work made for hire" is defined as "a work prepared by an employee within the scope of his or her employment."[43] Unlike the U.S. Copyright Act, the FIPC does not recognize the concept of work for hire.[44] However, the FIPC provides an exception for collective works.[45] Collective works are defined as:

---

[40] *Fonar*, 105 F.3d at 104 (citation omitted).

[41] *Id.* (citation omitted).

[42] 17 U.S.C. § 201(b).

[43] *Id.* § 101.

[44] *See* FIPC Article L. § 113-5.

[45] *See id.*

12

> [A] work created at the initiative of a natural or legal person who edits it, publishes it, and discloses it under his name and in which the personal contributions of the various authors who participated in its production are merged in the overall work for which they were conceived, without it being possible to attribute to each author a separate right in the work as created.[46]

Pursuant to FIPC Article L. § 113-5, "[a] collective work shall be the property, unless proved otherwise, of the natural or legal person under whose name it has been disclosed. The author's rights shall vest in such person."[47]

### b. Transfer of Copyright Ownership

The Copyright Act defines the transfer of copyright ownership as the "assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright."[48] Transfer is invalid, however, "other than by operation of law . . . unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed."[49] "The Copyright Act

---

[46] FIPC Article L. § 113-2(2).

[47] *Id.*

[48] 17 U.S.C. § 101.

[49] *Id.* § 204(a).

13

does not equate transfer of the tangible form of a copyrighted work with transfer of ownership over the copyright, absent an agreement."[50]

## 2. Copying by Defendants

To satisfy the second element of an infringement claim, "a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'"[51] "The distinction between 'actual copying' and 'improper or unlawful appropriation' reflects the fact that 'not all copying results in copyright infringement . . . .'"[52]

Because direct evidence is seldom available to prove "actual copying," a plaintiff may fulfill this requirement with indirect evidence, "including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony."[53] "It is only after actual copying is established that one claiming infringement then proceeds to demonstrate that the copying was

[50]     *Lighthouse Solutions, LLC v. Connected Energy Corp.*, No. 03 Civ. 6275, 2004 WL 1811391, at *4 (W.D.N.Y. Aug. 13, 2004).

[51]     *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).

[52]     *Bauer v. Yellen*, No. 06 Civ. 15287, 2008 WL 1849158, at *4 (S.D.N.Y. Apr. 22, 2008) (quoting *Boisson*, 273 F.3d at 267).

[53]     *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992) (quotation marks and citations omitted).

14

improper or unlawful by showing that the second work bears substantial similarity to protected expression in the earlier work."[54] Under the "ordinary observer test," substantial similarity exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."[55] When copyright protection "is limited to the particular selection or arrangement" of common elements from the public domain, "the protection given [to the holder] is thin."[56] Summary judgment may be appropriate "either because the similarity between the two works concerns only 'non-copyrightable elements of the plaintiff's work,' or because no reasonable jury, properly instructed, could find that the two works are substantially similar."[57] However, "[b]ecause substantial

---

[54]     *Castle Rock Entm't*, 150 F.3d at 137 (quotations omitted).

[55]     *Hamil Am., Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999).

[56]     *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003). *Accord Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996) ("Where the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying . . . .").

[57]     *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 240 (2d Cir. 1983) (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir. 1980).

similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation."[58]

### 3. Willfulness

"Willfulness in the context of statutory damages for copyright infringement means that the infringer either had actual knowledge that it was infringing the Plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing Plaintiffs' copyrights."[59] For the purpose of awarding enhanced statutory damages under § 504(c)(2), an infringement is "willful" if the defendant had "knowledge that its actions constitute an infringement."[60] This knowledge may be "actual or constructive."[61]

---

[58]    *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980).

[59]    *UMG Recordings, Inc. v. MP3.com, Inc.*, No. 00 Civ. 472, 2000 WL 1262568, at \*4 (S.D.N.Y. Sept. 6, 2000) (quotation omitted). *Accord Hamil Am.*, 193 F.3d at 97 ("The standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility."); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1010-11 (2d Cir. 1995); *N.A.S. Import, Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992); *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986); *NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 475-76 (S.D.N.Y. 2001); *Antenna Television, A.E. v. Aegean Video Inc.*, No. 95 Civ. 2328, 1996 WL 298252, at \*10 (E.D.N.Y. Apr. 22, 1996).

[60]    *Fitzgerald Publ'g Co.*, 807 F.2d at 1115.

[61]    *Id.*

16

## C. Trademark Infringement Under the Lanham Act

Section 32(1) of the Lanham Act governs claims for infringement of a registered trademark, prohibiting the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."[62] The Lanham Act defines a "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."[63] Pursuant to 15 U.S.C. § 1057(b), "[a] certificate of registration of a mark upon the principal register . . . shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . ."[64] Moreover, "[a] registered trademark becomes incontestable if it has been in continuous use for five consecutive years subsequent to its registration and is still in use."[65]

---

[62] 15 U.S.C. § 1114(1).

[63] *Id.* § 1127.

[64] *Id.* § 1057(b).

[65] *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1076 (2d Cir. 1993).

17

> A claim of trademark infringement, whether brought under [section 32(1) or 43(a) of the Act], is analyzed under the familiar two-prong test .... The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.[66]

In order to determine whether a defendant's use of a mark is likely to cause consumer confusion, courts in the Second Circuit typically engage in a weighing analysis using the eight *Polaroid* factors: (1) the strength of plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the proximity of the products; (4) the likelihood that plaintiff will "bridge the gap;" (5) actual confusion between products; (6) defendant's good or bad faith in adopting the mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers.[67] However, "[n]o single factor is dispositive, nor is a court limited to consideration of only these factors."[68] "Further, 'each factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as

---

[66] *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (citing *Gruner + Jahr USA Publ'g*, 991 F.2d 1072 and *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999)). *Accord Louis Vuitton Malletier v. Dooney Burke, Inc. ("Vuitton II")*, 454 F.3d 108, 115 (2d Cir. 2006).

[67] *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

[68] *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004) (citing *Polaroid*, 287 F.2d at 495).

to the source of the product.'"[69] The Second Circuit has noted that "the court may in some circumstances grant summary judgment even without considering all of the *Polaroid* factors."[70]

"The likelihood-of-confusion inquiry turns on whether 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.'"[71] "To support a finding of infringement, there must be a 'probability of confusion, not a mere possibility.'"[72] "If a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment."[73] As such, summary judgment should only be

---

[69]     *Id.* (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986)).

[70]     *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 167 (2d Cir. 2004) (citation omitted).

[71]     *Id.* at 161 (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477-78 (2d Cir. 1996)).

[72]     *Id. (*quoting *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001)).

[73]     *Cadbury Beverages*, 73 F.3d at 478.

granted "where the undisputed evidence would lead only to one conclusion as to

whether confusion is likely."[74]

## D.    Trademark Dilution Under 15 U.S.C. § 1125(c)

Section 1125(c) of Title 15 of the United States Code provides, in

pertinent part:

> Subject to the principles of equity, the owner of a famous
> mark that is distinctive, inherently or through acquired
> distinctiveness, shall be entitled to an injunction against
> another person who, at any time after the owner's mark has
> become famous, commences use of a mark or trade name
> in commerce that is likely to cause dilution by blurring or
> dilution by tarnishment of the famous mark, regardless of
> the presence or absence of actual or likely confusion, of
> competition, or of actual economic injury.[75]

In contrast to trademark infringement, a cause of action for trademark dilution seeks

to prevent the "diminution of the strength of the famous mark [] even though no

confusion as to source, sponsorship, affiliation or connection has occurred."[76] As a

result, "[d]ilution by blurring is not just another name for the injury to a trademark

caused by confusion and mistake . . . [it] is a name for a kind of erosion of the

---

[74]    *Id.*

[75]    15 U.S.C. § 1125(c)(5).

[76]    J. Thomas McCarthy, 4 *McCarthy on Trademarks and Unfair
Competition* § 24:69 (4th ed. 2008).

20

strength of a mark that could occur in the absence of consumer confusion."[77]

"[D]ilution presupposes no mental confusion over affiliation or connection, but rather

a state of mind that recognizes independent sources and affiliation."[78] The Second

Circuit has made clear that a "plaintiff cannot prevail on a state or federal dilution

claim unless the marks at issue are 'very' or 'substantially similar.'"[79]

## E. Trade Dress and False Designation of Origin Under 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a

cause of action against:

> [A]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship or approval of his or her goods, services or commercial activities . . . .[80]

---

[77] *Id.* "The dilution theory grants protection to a strong, well-recognized mark even in the absence of a likelihood of confusion, if defendant's use is such as to be likely to diminish or dilute the strong identification value of the plaintiff's mark . . . ." *Id.* § 24:72.

[78] *Id.* § 24:72.

[79] *Playtex Prods., Inc.*, 390 F.3d at 167 (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 176 (2d Cir. 2000)).

[80] 15 U.S.C. § 1125(a).

Section 43(a) protects a product's trade dress, which includes the "design and appearance of a product as well as that of the container and all elements making up the total visual image by which the product is presented to customers."[81] "In product design trade dress cases, therefore, the plaintiff must show (1) that its trade dress has 'acquired' distinctiveness in the form of 'secondary meaning' and (2) the likelihood of confusion."[82]

## F. State Law Claims

### 1. Trademark Infringement and Unfair Competition

"The elements necessary to prevail on common law causes of action for trademark infringement 'mirror the Lanham Act claims.'"[83] "The essence of unfair competition under New York common law is 'the bad faith misappropriation of the

---

[81] *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (citing *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir. 1985)).

[82] *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003) (quoting 15 U.S.C. § 1125(a)(3)).

[83] *Louis Vuitton Malletier v. Dooney & Bourke, Inc. (Vuitton I)*, 340 F. Supp. 2d 415, 436 (S.D.N.Y. 2004), *vacated in part*, *Vuitton II* 454 F.3d 108 (quoting *TCPIP Holding Co. v. Haar Commc'ns*, No. 99 Civ. 1825, 2004 WL 1620950, at *6 n.5 (S.D.N.Y. July 19, 2004)). *Accord Cartier Int'l B.V. v. Ben-Menachem*, No. 06 Civ. 3917, 2008 WL 64005, at *13 (S.D.N.Y. Jan. 3, 2008) ("The same acts that constitute trademark counterfeiting and unfair competition under federal laws give rise to [p]laintiffs' claims of common law trademark infringement and unfair competition, as well as unfair competition under New York law.").

labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'"[84] "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion in an action for equitable relief."[85] A claim of unfair competition under New York law also requires evidence of defendant's bad faith.[86]

## 2. Trademark Dilution Under Section 360-1 of the New York General Business Law

Under New York General Business law, a "[l]ikelihood of . . . dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."[87] To prevail on a claim under section 360-1 of the New York General Business Law, *first*, the plaintiff's

---

[84]   *Rosenfeld v. W.B. Saunders, a Division of Harcourt Brace Jovanovich, Inc.*, 728 F. Supp. 236, 249-50 (S.D.N.Y.), *aff'd*, 923 F.2d 845 (2d Cir. 1990) (quoting *Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F. Supp. 424, 429 (S.D.N.Y. 1987)).

[85]   *Jeffrey Milstein*, 58 F.3d at 35. *Accord W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993) (citation omitted).

[86]   *See Vuitton I*, 340 F. Supp. 2d at 436.

[87]   N.Y. Gen. Bus. Law § 360-1.

trademark must be distinctive and *second*, the plaintiff must show a likelihood of dilution.[88]

With respect to the first element, "[d]istinctiveness for dilution purposes often has been equated with the strength of a mark for infringement purposes."[89] "New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive."[90]   Dilution under the second element can involve blurring or tarnishment.[91] "To determine the likelihood of blurring, [courts look] to six factors, including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; (vi) the renown of the junior mark."[92]

## G.    Nominative Fair Use

---

[88]    *See Vuitton I*, 340 F. Supp. 2d at 436.

[89]    *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989) (citations omitted).

[90]    *New York Stock Exch., Inc. v. New York, New York Hotel, LLC*, 293 F.3d 550, 557 (2d Cir. 2002) (citation omitted).

[91]    *See id.* (citation omitted).

[92]    *Id.* at 558.

24

"The nominative fair use doctrine evolved from the Ninth Circuit's

holding in *The New Kids on the Block v. News America Publishing Incorporated*."[93]

> In *New Kids*, the Ninth Circuit held that 'a commercial user'
> who is not using someone else's mark to refer to his own
> product 'is entitled to a nominative fair use defense
> provided he meets the following three requirements: First,
> the product . . . must be one not readily identifiable without
> use of the trademark; second, only so much of the mark . .
> . may be used as is reasonably necessary to identify the
> product . . .; and third, the user must do nothing that would,
> in conjunction with the mark, suggest sponsorship or
> endorsement by the trademark holder.'[94]

"[U]se of [a trademark] is only nominative if it does not imply sponsorship or

endorsement by the trademark holder. In other words, a use is not nominative if it

creates a likelihood of confusion about the mark-holders's affiliation or

---

[93] *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 207 (E.D.N.Y. 2007) (citing *The New Kids on the Block v. News America Pub. Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)).

[94] *Id.* at 207 (quoting *New Kids*, 971 F.2d at 308). *Accord Chambers v. Time Warner, Inc.*, 282 F.3d 147, 156 (2d Cir. 2002) (impliedly recognizing this Circuit's adoption of the *New Kids* nominative fair use defense).

sponsorship."[95]    Summary judgment based on likelihood of confusion is not

appropriate unless the undisputed evidence leads to only one conclusion.[96]

## H.    Design Patent Infringement

The test for determining infringement of a design patent was

established more than one hundred years ago by the Supreme Court. It requires

that:

> [I]f, in the eye of an ordinary observer, giving such attention as a
> purchaser usually gives, two designs are substantially the same,
> if the resemblance is such as to deceive such an observer,
> inducing him to purchase one supposing it to be the other, the
> first one patented is infringed by the other.[97]

A determination of infringement of a design patent requires the application of two

tests, both of which must be satisfied: (1) the "substantially the same" test (also

known as the "ordinary observer" test); and (2) the "point of novelty" test.[98]  "To

---

[95]    *Chambers v. Time Warner*, No. 00 Civ. 2839, 2003 WL 749422, at *3
(S.D.N.Y. Aug. 29, 2003) (asserting that "the third element of the nominative fair
use defense requires that the use of the trademark not create a likelihood of
confusion as to the mark-holder's sponsorship, endorsement or affiliation")
(quotations omitted).

[96]    *See The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955,
960 (2d Cir. 1996).

[97]    *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1872)).

[98]    *Lawman Armor Corp. v. Winner Int'l, LLC*, 437 F.3d 1383, 1384
(Fed. Cir. 2006). *Accord Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d

find infringement, a court must both compare 'two items through the eyes of the ordinary observer' and 'attribute their similarity to the novelty which distinguishes the patented device from the prior art.'"[99] The "ordinary observer" test requires comparison of the two designs from the viewpoint of the ordinary observer to "determine whether the patented design as a whole is substantially the same in appearance as the accused design."[100] Willful infringement provides a basis for the award of treble damages.[101]

## I.     False Advertising

Section 43(a) of the Lanham Act provides two bases for liability:  (i) false representations concerning the origin, association, or endorsement of goods or services through wrongful use of another's distinctive mark or other device; and (ii) false representations in advertising concerning the quality of goods and services ("false advertising").[102]  "To have standing for a [Lanham Act] false

---

1193, 1196-97 (Fed. Cir. 1995).

[99]     *Park B. Smith, Inc. v. CHF Indus.*, No. 06 Civ. 869, 2008 WL 650339, at \*4 (S.D.N.Y. Mar. 6, 2008) (quoting *Litton Sys. v. Whirlpool*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

[100]     *Tropicana Prod., Inc. v. Land O' Lakes, Inc.*, 286 F. Supp. 2d 343, 345 (D. Del. 2003) (citations omitted).

[101]     *See* 35 U.S.C. § 289.

[102]     *See* 15 U.S.C. § 1125(a).

advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury."[103]

## J.     Consumer Fraud

Section 349 of New York General Business Law is a consumer protection statute. It creates a private right of action protecting consumers from "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"[104] A plaintiff bringing claims under section 349 must, "at the threshold, charge conduct that is consumer oriented . . . ."[105] "Under New York law, a deceptive act or practice "that has 'a

---

[103]     *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001). *Accord Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992).

[104]     N.Y. Gen. Bus. Law § 349(h), (a). *See also Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344 (1999); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2000).

[105]     *New York Univ. v. Continental Ins. Company*, 87 N.Y.2d 308, 320 (1995). *Accord MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("The injury must be to the public generally as distinguished from the plaintiff alone."); *Gaidon*, 94 N.Y.2d at 344 ("As a threshold matter, in order to satisfy General Business Law § 349 plaintiff's claims must be predicated on a deceptive act that is 'consumer oriented.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (1995))).

broader impact on consumers at large' or similarly situated consumers meets this threshold test."[106]

Once a plaintiff meets the consumer-oriented threshold test, it must then show "that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that the plaintiff has been injured by reason thereof."[107] "A 'deceptive act or practice' has been defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"[108] As the Second Circuit held in *Securitron Magnalock Corp. v. Schnabolk*, a competitor can properly state a claim under section 349 if "the matter affects the public interest in New York . . . ."[109] Because section 349 is modeled after the Federal Trade Commission Act, federal courts have interpreted the statute's scope as limited to the types of offenses to the public interest that would trigger intervention under the Act, such as potential danger to the public health or

[106] *Shapiro*, 212 F.3d at 126 (quoting *Oswego*, 85 N.Y.2d at 25).

[107] *Id.* (quoting *Gaidon*, 94 N.Y.2d at 344 (citation and quotation marks omitted)).

[108] *Id.* (quoting *Oswego*, 85 N.Y.2d at 25).

[109] *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)). *Accord Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 285-86 (S.D.N.Y. 2002).

29

safety.[110] This Court has similarly explained that "injury or harm that satisfy this standard include 'potential danger to the public health or safety.'"[111]

## IV. DISCUSSION

### A. Copyright Infringement

Yurman, Cartier, and Gucci assert that they are entitled to summary judgment on their claims for copyright infringement with respect to twelve Yurman designs, one Cartier design, and two Gucci designs.[112] Defendants, however, allege that certain copyrights are invalid and on that ground seek summary judgment on claims arising from those designs. The allegedly invalid copyrights include: (1) the single work registrations for the Yurman, Gucci, and Bulgari collections; (2) the French registrations for the Cartier and Van Cleef &

---

[110]  *See Sports Traveler v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150, 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997). *Accord Securitron*, 65 F.3d at 264-65; *EFS Mktg., Inc. v. Russ Berrie & Co., Inc.*, 836 F. Supp. 128, 137 (S.D.N.Y. 1993), *aff'd in part, vacated in part, rev'd in part on other grounds*, 76 F.3d 487 (2d Cir. 1996); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F. Supp. 182, 215-16 (citing *Vitabiotics Ltd. v. Krupka*, 606 F. Supp. 779 (E.D.N.Y. 1984)).

[111]  *La Cibeles, Inc. v. Adipar, Ltd.*, No. 99 Civ. 4129, 2000 WL 1253240, at *15 (S.D.N.Y. Sept. 1, 2000) (quoting *Sports Traveler, Inc.* 1997 WL 137443, at *2).

[112]  *See* Copyright Reg. Nos. VA 771-476, VA 785-338, VA 1-024-276, VA 1-024-278, VA 1-024-280, VA 1-024-281, VA 1-094-336, VA 1-116-155, VA 1-282-478, VA 1-282-481, VA 1-384-012, VA 1-390-915, VA 1-130-790, VA 1-375-802, VA 1-395-947.

Arpels works; and (3) the Form VA registrations for the Bulgari works. Because each of these copyrights is registered, defendants must overcome the presumption of validity afforded to registered copyrights under the Copyright Act.[113]

## 1. Ownership of a Valid Copyright

### a. Single Work Registrations for Jewelry Collections

Several of the copyright registrations proffered by Yurman, Gucci, and Bulgari cover collections of jewelry designs.[114] Defendants contend that these designs were not properly registered because the Copyright Office lacks the authority to issue a group registration for a collection of jewelry designs.[115]

However, the jewelry collections properly fall under the category of single work registrations rather than group registrations. As discussed above, a single work registration for a published work covers "all copyrightable elements

---

[113] *See* 17 U.S.C. § 410(c). *See also M. Lady, LLC*, 2007 WL 2728711, at *3 (citing *Fonar*, 105 F.3d at 104).

[114] *See* 37 C.F.R. § 202.3(b)(4)(i)(A).

[115] *See Kay Berry*, 421 F.3d at 204. Group registrations are permitted pursuant to 17 U.S.C. § 408(c)(1). However, the Register of Copyrights ultimately determines which types of works will be eligible for group registration. *See id.* § 408(c)(2). Regulations promulgated under the statute provide for group registration of automated databases, related serials, daily newspapers, contributions to periodicals, daily newsletters, and published photographs. *See* 37 C.F.R. §§ 202.3(b)(4)-(9). Notably, neither sculptural works nor jewelry designs are included in the group registration regulations.

31

that are otherwise recognizable as self-contained works, that are included in a

single unit of publication, and in which the copyright claimant is the same."[116] In

this case, a collection of jewelry – usually a set of pieces thematically related and

released for sale at the same time – can be deemed a single unit of publication.[117]

Both Gucci's and Yurman's copyrighted designs cover single jewelry collections,

and letters from the copyright office to both companies affirm that the registrations

cover "a collection of individual works which were apparently published as a

single unit."[118]   Accordingly, defendants' motion to invalidate Plaintiffs'

copyright based on the registration of jewelry collections is denied.

[116]   37 C.F.R. § 202.3(b)(4)(i)(A).

[117]   "'Publication' is the distribution of copies of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101.

[118]   3/14/07 Letter from Allan Runge, Examiner, Visual Arts Section of U.S. Copyright Office, to Gucci America, Inc. Re: Spring Summer 2007 Jewelry Collection, Ex. D to Declaration of Plaintiffs' Attorney Louis Ederer in Opposition to Defendants' Motion for Partial Summary Judgment ("Ederer Decl."). *See also* 1/26/07 Letter from U.S. Copyright Office to Yurman Studios, Inc. Re: Pearl Collection I - 2005; Pearl Collection II - 2005; Quatrefoil Collection I - 2005; Renaissance Collection IV - 2005; Renaissance Collection VI - 2005 and Renaissance Collection VII - 2005, Ex. D to Ederer Decl. Both letters warn the respective plaintiffs that although the Copyright Office has registered the collections because "at least one work in each collection would support an independent claim to copyright . . . [s]ome of the works, if considered separately, would not support an independent claim." 1/26/07 Letter from U.S. Copyright Office to Yurman Studios; 3/14/07 Letter from Allan Runge to Gucci America, Inc. The letters do not specify which of the individual works in the collections would not support an independent claim.

32

### b. Works Made for Hire and the French Intellectual Property Code

Defendants allege that Cartier and Van Cleef & Arpels do not own

their copyrights under French law, and therefore, they lack standing to bring

claims based on these French copyrights.[119] Rather, defendants argue, because

FIPC does not recognize the concept of work-for-hire, the general presumption

that the designers of the jewelry are the actual owners applies.[120]

It is undisputed that French law governs ownership. Plaintiffs argue

that the Cartier designs are exempt from this general presumption of ownership by

the author, under the exception for collective works.[121] Pursuant to the FIPC, "[a]

collective work shall be the property, unless proved otherwise, of the natural or

legal person under whose name it has been disclosed."[122] Because the Cartier

designs were created by design teams "at the initiative of" Cartier, and were

---

[119]    *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp. Mem..") at 5.

[120]    *See id.* at 6.

[121]    *See id.* (citing FIPC Article L. § 113-5). *Accord* 6/30/08 Legal Opinion of Professor Nicolas Bincton, Ex. A to Declaration of Bharat Dube, Senior Counsel for Richemont International, S.A., in Opposition to Defendants' Motion for Partial Summary Judgment ("Dube Decl.") ¶¶ 3,4; 3/24/08 Deposition of Catherine LaCaze, jewelry marketing professional, Ex. C to Ederer Decl. ¶ 4.

[122]    FIPC Article L. § 113-5.

published under the Cartier name, they are collective works owned by Cartier.[123]

Furthermore, all Cartier designers are required to enter into written employment

contracts that expressly state that the designs they contribute to constitute

collective works belonging to Cartier.[124] Accordingly, defendants have failed to

sufficiently rebut the presumption of copyright validity.

With respect to the single Van Cleef & Arpels design, Madame

Carbarbaye, the designer, assigned her copyright to Van Cleef & Arpels in June

2001.[125] Therefore, as a matter of law, Cartier and Van Cleef & Arpels own the

French copyrighted works at issue and have standing to assert claims for

infringements of such works.

### c. Bulgari's Form VA Copyright Registrations

Defendants argue that the Court lacks jurisdiction over Bulgari's

copyright claims because its registrations cover only the catalogs depicting the

jewelry collections, not the jewelry items themselves.[126] Defendants point to the

---

[123]    *Id.* § 113-2(2).

[124]    *See* 4/2/01 Employment Contracts, Exs. B, C to Dube Decl. ¶ 4,.

[125]    *See* 3/27/08 Deposition of Frederic Gilbert-Zinck,General Secretary
of Van Cleef & Arpels Int'l, S.A.S., Ex. A to Declaration of Frederic Gilbert-
Zinck in Opposition to Defendants' Motion for Partial Summary Judgment ¶¶ 5-6.
*See also* 17 U.S.C. § 101.

[126]    *See* Pl. Opp. Mem. at 8.

34

fact that Bulgari indicated on its Form VA applications that the "Nature of the Work" is a catalog and the "Nature of Authorship" is photographs and text.[127] However, this appears to be a minor mistake that Bulgari is now attempting to correct by filing supplemental applications for the registrations in question, clarifying that the registrations cover the jewelry designs depicted in the catalogs.[128] Minor mistakes "made in good faith and unaccompanied by deceptive intent, will not serve to invalidate registration."[129]

Moreover, an administrative classification such as "Nature of Work" is relevant for purposes of deposit and registration, but it "has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title."[130] The Compendium on Copyright Office Practices states that in the nature-of-work space, a "description of the physical form of the work is generally acceptable."[131] Thus, Bulgari's description of the registered work as a "catalog," rather than jewelry, is not sufficient to invalidate the registration.

---

[127]    *See id.*

[128]    *See* Ederer Decl. ¶ 12.

[129]    *Greenwich Film Prods., S.A.*, 833 F. Supp. at 252.  *Accord Gund, Inc.*, 673 F. Supp. at 1237.

[130]    17 U.S.C. § 408(c)(1).

[131]    *Axelrod & Cherveny Architects, P.C.*, 2007 WL 708798, at *5 (citing Copyright Office Statement of Policy, 2000 WL 872412).

### d.    Originality of Yurman's Designs

Additionally, Yurman seeks summary judgment on defendants'
counterclaim for cancellation of each of the twelve copyright registrations on
which Yurman bases its copyright infringement claims.  Defendants argue that
these designs existed in the public domain in substantially the same form prior to
Yurman's registrations, and therefore they lack sufficient originality to be
protected by copyright.  Plaintiffs contend that defendants have failed to provide
any evidence in support of their defense of lack of originality in Yurman's
designs.

The bar for originality is extremely low; a work must possess merely
"some minimal degree of creativity."[132]  Further, copyright law protects the
combination of elements that are not original in themselves.[133]  Protection extends
to choices of "selection and arrangement, so long as they are made independently
by the compiler and entail a minimal degree of creativity."[134]  Yurman concedes
that it does not own each and every design element used in its creations, but rather

---

[132]    *Feist*, 499 U.S. at 345.

[133]    *See id.*

[134]    *Feist*, 499 U.S. at 348.

36

claims it owns the unique combination of elements which "work together to make an overall design that is new, fresh, and distinct from anything else . . . ."[135]

To rebut the presumption that Yurman's designs are original, defendants claim that the elements found in Yurman's products, such as twisted cable, the combination of gold and silver, and gemstones, are in the public domain and have been used in jewelry design for hundreds of years.[136] With respect to most of Yurman's designs, "this showing misses the point, however: the originality in Yurman's . . . designs inheres in the ways Yurman has recast and arranged those constituent elements."[137]

With respect to two copyrighted designs, however, the submissions by defendants raise fact issues regarding the originality of the combination of specific elements. First, a bracelet in Yurman's "Albion" collection, which consists of a thick twisted cable capped by a large gemstone that is attached to the cable with a contrasting metal sleeve on either side, is strikingly similar to an

---

[135]    Declaration of David Yurman in Support of Plaintiffs' Motion for Partial Summary Judgment ¶¶ 28-29.

[136]    *See* Declaration of Scott Zarin, Defendants' Attorney, in Support of Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Zarin Decl."), ¶ 7.

[137]    *PAJ, Inc.*, 262 F.3d at 109 (holding that Yurman designs were sufficiently original).

Egyptian "Bracelet with a Sardonyx" dated from the Third Century.[138]

Specifically, the Egyptian bracelet combines the elements of twisted cable, a

single large gemstone, and metal sleeves connecting the gemstone to the cable in

the same way as the Yurman bracelet. Similarly, the single chain bracelets and

necklaces in Yurman's "Linked Renaissance" collection use a very similar

combination of elements – a single link of twisted cable alternated with a single

small gemstone – as a chain identified in defendants' submissions as an 1880s-

1890s bracelet.[139]

Scholars disagree, and the Second Circuit has not decided, as to

whether a defendant challenging the originality of a plaintiff's copyrighted work

must provide evidence of actual copying, of if copying may be inferred through

plaintiff's access to designs in the public domain and the substantial similarity of

the works to those designs.[140] At the summary judgment stage, drawing all

inferences in favor of the non-moving party, Yurman's access to these historical

jewelry designs in the public domain must be inferred.

---

[138]    *See* Photographs of Jewelry, Ex. 6 to Zarin Decl.

[139]    *See id.*

[140]    *See Boisson*, 273 F.3d at 269-70 ("Assuming arguendo that an
inference is allowable, defendants in the case at hand nevertheless fall short of
proving [plaintiff] copied from the public domain.").

Because defendants' submissions raise fact issues regarding the
originality of the two designs, summary judgment is denied on defendants'
counterclaim as to the Albion collection bracelet and the Linked Renaissance
single chain jewelry.[141] However, with respect to all other Yurman copyrighted
designs, after careful review of the images of preexisting jewelry produced by
defendants, I conclude that Yurman's designs are sufficiently original as a matter
of law and Yurman is entitled to summary judgment on the claims for cancellation
of those designs.

## 2. Copying by Defendants

After establishing that they own valid copyrights, plaintiffs must next
show that, as a matter of law, defendants actually copied the copyrighted designs
such that substantial similarity exists between defendants' designs and the
protectable elements of plaintiffs' designs.[142] Plaintiffs first contend that access to
their designs for the purposes of copying may be inferred because they are widely
disseminated, and defendants' own web site highlights the fame of the respective

---

[141]     Yurman has not moved for summary judgment on its copyright claims
arising out of either of these particular designs, however.

[142]     *See Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp.
1328, 1334 (S.D.N.Y. 1997).

designs.[143] Defendants do not dispute that plaintiffs' work is accessible; however, they contend that there are genuine issues of material fact with respect to the substantial similarity of the respective products.[144]

Plaintiffs argue that under the "ordinary observer test," a comparison of the jewelry designs definitively establishes that defendants copied plaintiffs' works. In response, defendants first argue that the more stringent "discerning observer" standard should be applied in this case, because the plaintiffs' work "is not 'wholly original,' but incorporates elements from the public domain."[145] Under that test, after comparing the original and the allegedly infringing works, the observer must "determine whether [any] similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking," or in other words, in the public domain.[146]

---

[143]   *See Laureyssens*, 964 F.2d at 139-40.

[144]   *See* Zarin Decl. ¶¶ 7-28.

[145]   *Boisson v. Banian Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001) (quoting *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 514 (2d Cir. 1991)).

[146]   *Tufenkian*, 338 F.3d at 134-35.

Plaintiffs' allegations of infringement fall within the "discerning observer" test. They contend not simply that defendants have copied the public domain elements of their designs, such as twisted cable, but that they have copied plaintiffs' unique combinations of those elements to mimic the overall "concept and feel" of the copyrighted designs.[147]

Defendants next argue that plaintiffs' evidence purporting to show substantial similarity does not warrant summary judgment, because fact issues remain. In general, courts are wary of granting summary judgment in copyright infringement cases because of their highly fact specific nature.[148] In this case, however, the similarity of many of the designs is so striking that, upon direct comparison of defendants' jewelry and plaintiffs' copyrighted designs, no reasonable juror could find that defendants did not copy plaintiffs' protected works. Defendants' jewelry is in some cases identical or nearly identical to plaintiffs' in overall shape, style, and use and combination of design elements.[149]

---

[147] *Id.* at 133 (discussing the application of the "total concept and feel" test).

[148] *See Hoehling*, 618 F.2d at 977. *See also Leibowitz v. Paramount Pictures Corp.*, 948 F. Supp. 1214, 1217 (S.D.N.Y. 1996); *Robinson v. Random House, Inc.*, 877 F. Supp. 830, 835 (S.D.N.Y. 1995).

[149] The following comparisons show that the listed items sold by defendants are nearly identical to, and copied from, plaintiffs' copyrighted designs: Comparison of Yurman Hampton Collection Enhancer, VA 1-024-280, with Overstockjeweler.com Item No. TF4121, Ex. E to Yurman Decl. (earrings

Other pieces are not identical but are still substantially similar, differing only in

the use of a different color gemstone or a slightly different combination of

plaintiffs' distinctive design elements.[150]

---

consisting of a half hoop of twisted silver cable and a single dangling pearl with gold connector); Comparison of Yurman Madison Chain Collection Ring, VA 1-282-481, with Overstockjeweler.com Item No. PK-DYmadisonr, Ex. J to Yurman Decl. (silver ring with link pattern in center, flanked by a vertical silver twisted chain with gold border); Comparison of Cartier Agrafe Bracelet, VA 1-130-790, with Overstockjeweler.com Item No. SG-3489-ASH, Ex. L to Dube Decl. (chain composed of short diamond-studded links with a diamond-studded circle-and-hook clasp); Comparison of Gucci Item No. 170845J85408065, VA 1-375-802, with Overstockjeweler.com Item No. SC-HE56177, Ex. B to Declaration of Jonathan Moss, General Counsel of Gucci America, Inc., in Support of Plaintiffs' Motion for Partial Summary Judgment ("Moss Decl.") (bracelet composed of silver links in the shape of stirrups); Comparison of Gucci Item No. 139454J85409066, VA 1-375-802, with Overstockjeweler.com Item No. PK-74390596, Ex. D to Moss Decl. (silver ring with stirrup design in center); Comparison of Gucci Item No. 141464J85409066, VA 1-375-802, with Overstockjeweler.com Item No. PK-K-75, Ex. E to Moss Decl. (diamond-studded stirrup earrings); Comparison of Gucci Item No. 154873J85008000, VA 1-395-947, with Overstockjeweler.com Item No. SSTR-NMRN150G, Ex. I to Moss Decl. (silver chain composed of thick ovals with two circular holes linked together).

[150]    The following comparisons show that defendants' listed items are substantially similar to plaintiffs' copyrighted designs: Comparison of Yurman Hampton Collection Necklace, VA 1-024-281, with Overstockjeweler.com Item Nos. BSB-Palb, BSB-S1200T, PK-DYtopazE, Ex. F to Yurman Decl. (copying Yurman's design of a square stone surrounded by silver twisted chain using different colored gemstone in various types of jewelry); Comparison of Yurman Pave Collection Enhancer, VA 1-024-276, with Overstockjeweler.com Item Nos. BSB-PCZALB, DY2882, G-SCR3157T, and BSB-3702, Ex. E to Yurman Decl. (using diamonds encased in square of twisted cable in various jewelry items); Comparison of Yurman Albion Collection Necklace, VA 1-024-278, with Overstockjeweler.com Item Nos. BSB-Palb, BSB-S1200T, PK-DYtopazE, DY-7014, and BSB-Salbcable, Ex. D to Yurman Decl. (using different colored

Moreover, defendants themselves advertise their products' similarity to plaintiffs' copyrighted designs on their website. For example, a ring copying Gucci's stirrup design is identified as a "Gucci-esque Inspired Sterling Silver Horsebit Ring."[151] A "Cartier-esque Inspired necklace" is described as "strikingly similar to the real thing."[152] With these statements describing each of the infringement designs as "inspired by" plaintiffs' works, defendants have in effect admitted to copying the designs.

Defendants have not submitted any evidence that calls into dispute the similarity between their jewelry and plaintiffs' copyrighted designs.[153]

gemstones in square twisted-cable setting); Comparison of Yurman Capri Collection ring, VA 1-094-336, with Overstockjeweler.com Item No. AF2-0039 (different colored gemstone in substantially similar setting); Comparison of Yurman Albion Collection earrings, VA 1-116-155, with Overstockjeweler.com Item Nos. PK-D_36, AF-PDY2C (different colored gemstones in square, diamond-encased setting); Comparison of Yurman Linked Renaissance Collection pendant, VA 1-384-012, with Overstockjeweler.com Item No. BSB-P-SE-7010, Ex. K to Yurman Decl. (different colored gemstones); Comparison of Yurman Pearl Collection chain, VA 1-390-915, with Overstockjeweler.com Item No. PK-74812751, Ex. L to Yurman Decl. (silver rather than gold chain linked with pearls).

[151] Overstockjeweler.com web page, Ex. F to Moss Decl.

[152] Overstockjeweler.com web page, Ex. L to Dube Decl.

[153] Defendants' only argument is that the images of their jewelry submitted by plaintiffs are blurry and do not allow detailed comparison. Although certain images from the Overstockjeweler.com website are unclear, for each allegedly infringing design plaintiffs have submitted a clear photograph of their protected design and clear images of defendants' jewelry in a side-by-side chart.

43

Although an observer – either ordinary or discerning – might notice that the

quality of craftsmanship or materials is lower in defendants' pieces than in

plaintiffs', that difference alone would not allow a reasonable juror to find that

defendants' jewelry is not substantially similar to plaintiffs' copyrighted designs

such that the jewelry was not copied. Therefore, plaintiffs are entitled to summary

judgment on their copyright infringement claims arising from certain designs.

Other pieces of jewelry sold by defendants cannot be deemed

substantially similar as a matter of law because of differences in the texture and

type of materials, or differences in the combination of design elements.[154]

---

[154] The following comparisons show some differences between
defendants' listed items and plaintiffs' copyrighted designs, precluding summary
judgment: Comparison of Yurman Bracelet, VA 771-476, with
Overstockjeweler.com Item No. Zan-B164-2, Ex. A to Yurman Decl. (defendants'
bracelet does not include diamond-studded gold highlight); Comparison of
Yurman Earrings, VA 785-338, with Overstockjeweler.com Item No. AF2-
CRE064SN (defendants' ring differs in structure from Yurman earrings);
Comparison of Yurman Crossover Collection piece, VA 1-282-478, with
Overstockjeweler.com Item No. BSB-E73847769, Ex. I to Yurman Decl. (different
clasp and different colored metals); Comparison of Gucci Item No.
133292j85008000 (VA 1-375-802) with Overstockjeweler.com Item Nos. PK-3S-
656-ASH, WH-SB0850, Ex. C to Moss Decl. (different combination of stirrup
design elements and placement of diamond highlights); Comparison of Gucci Item
No. 170843J85408065 (VA 1-375-802) with Overstockjeweler.com Item Nos.
925-e-6303, PK-ee-ASH, Ex. F to Moss Decl. (same); Comparison of Gucci Item
No. 160356J84008106 (VA 1-395-947) with Overstockjeweler.com Item No. PK-
II-NET-ASH, Ex. H to Moss Decl. (different surface texture).

Summary judgment on copyright claims arising from these designs is therefore inappropriate at this juncture.

## B. Infringement of Cartier and Gucci Design Marks Under the Lanham Act

Cartier and Gucci move for summary judgment on their trademark infringement claims, arguing that defendants have counterfeited their design trademarks.[155] Cartier has registered trademarks for various designs: a screw-head imprint pattern in various settings, a pattern resembling a tic-tac-toe grid enclosed in a circle that covers the face of a watch, and a square watch face with Roman numerals. Gucci has a registered trademark of an elongated and squared-off capital letter "G." The two plaintiffs have introduced certificates of trademark registration as evidence of their respective ownership of each of the trademarks at issue.[156] Accordingly, plaintiffs have established that their marks are entitled to protection.

In most cases, as noted previously, a plaintiff must demonstrate that a defendant's use of its trademark is likely to cause consumers confusion as to the

---

[155] *See* Trademark Reg. Nos. 1372423, 2322769, 2436100, 3162410, 3282847, 3282846, 79037955, 2234272.

[156] *See* 6/2/08 Trademark Registrations, Exs. A-G to Dube Decl.; 6/2/08 Trademark Registration, Ex. J to Moss Decl.

origin or sponsorship of the defendant's goods.[157]  Here, however, plaintiffs argue

that defendants have used counterfeit marks, making a traditional likelihood of

confusion analysis unnecessary.  Courts agree that use of a counterfeit mark,

defined as "a spurious mark which is identical with, or substantially

indistinguishable from, a registered mark,"[158] will "by [its] very nature, cause

confusion."[159]

          An examination of defendants' products shows that several of the

allegedly infringing works incorporate designs that are substantially

indistinguishable from Cartier's design marks of a screw-head imprinted in

jewelry.  Ten of defendants' products feature a design that is identical to Cartier's

trademarked screw-head design imprinted on various items of jewelry.[160]  Because

---

[157]    *See Virgin Enters*, 335 F.3d at 146.

[158]    15 U.S.C. §1127.

[159]    *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).

[160]    Overstockjeweler.com Item No. IND-BL505, a bracelet imprinted with the screw-head design, is a counterfeit of Cartier's trademark 1,372,423 for "a bracelet having a series of simulated screws which encircle the goods and two real screws which appear at the points on the bracelet where it may be opened." Trademark Registration, Ex. A to Dube Decl.  The following items sold by defendants infringe on Cartier's Trademark Reg. No. 3,162,410, "a simulated head of a screw that is embedded in the goods": Overstockjeweler.com Item Nos. IND-BL505, Scrwtag-88228822, SF-273870925, PK-item774, G-STR0097V4-C01, PK-74398473, PK-BCTRL2, PK-CR627, SLGX-2422, and JC-20K5035.

no reasonable juror could find that these designs are not counterfeits of Cartier's registered design marks, Cartier is entitled to summary judgment on its design trademark infringement claims with respect to these items of jewelry.

However, from the images submitted by plaintiffs the Court cannot determine as a matter of law whether the remaining ten of defendants' products alleged to counterfeit the Cartier screw-head design trademark use marks that are substantially indistinguishable. For example, images of a silver bracelet and a necklace with two linked rings as a pendant, both sold by defendants, do not show any screw-head imprints.[161] Further, fact issues remain as to whether what appear to be screw-heads on the face of two watches sold by defendants are substantially identical to Cartier's design mark because a reasonable juror could determine that the screw-heads are functional rather than decorative, and therefore are not readily identifiable as or substantially similar to Cartier's mark.[162]

Fact issues also remain with respect to counterfeiting of other Cartier marks. The trademark registration for a square-face watch case and the watch

Trademark Registration and Comparison of Cartier Trademarked Screw Design to Overstock.com Items, Ex. D to Dube Decl.

[161] *See* Overstockjeweler.com Item Nos. G-STRnewitem751 and 925-D-1543, Ex. F to Dube Decl.

[162] *See* Overstockjeweler.com Item Nos. WH-4315 and CA-3883, Ex. F to Dube Decl.

47

itself contains significant detail, yet that level of detail cannot be discerned in defendants' allegedly counterfeit watch based on the image submitted by Cartier.[163] The trademark of Cartier's cross-hatch design designates it as a watch cover, but defendants use the design in other jewelry items such as rings and pendants.[164]

Similarly, I cannot determine as a matter of law that defendants' bracelet employing a pattern of what could be rectangular, highly stylized G letters is substantially indistinguishable to Gucci's trademarked "G" design. The pattern on defendants' bracelet appears to consist of G's that are upside-down and backwards, and are not at first glance recognizable as the letter G.[165] Because of this difference, a reasonable jury could determine that the bracelet does not counterfeit Gucci's mark.[166] In addition, Gucci's trademark describes the mark as one used on watches, not on bracelets or other jewelry.[167]

---

[163] *See* Overstockjeweler.com Item No. BRT-WCRTT2, Exs. E and F to Dube Decl.

[164] *See* Overstockjeweler.com Item Nos. SF-91663201, PK-0819, and PK-5778, Ex. C to Dube Decl.

[165] *See* Overstockjeweler.com Item No. sch-edfl16, Ex. J to Moss Decl.

[166] *See Colgate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc.*, 486 F. Supp. 2d 286, 291 (S.D.N.Y. 2007).

[167] *See* Trademark Registration, Ex. J to Moss Decl.

For those designs that do not use counterfeit marks as a matter of law,

plaintiffs must show that defendants' designs cause a likelihood of confusion as to

the source of the product in question. Such an inquiry is heavily fact-based, and

generally not amenable to disposition on summary judgment.[168] In this case, fact

issues remain with respect to several factors of the likelihood of confusion inquiry.

The similarity of the marks is not immediately evident. Further, the products do

not appear to be in proximity because of the allegedly large difference in price

between the respective jewelry pieces.[169] Further, plaintiffs have not produced any

evidence of actual confusion stemming from products sold by defendants.[170] Yet

defendants have produced numerous online customer reviews, none of which

indicate that customers believed they were buying plaintiffs' jewelry instead of

---

[168] *See S&L Vitamins, Inc.*, 521 F. Supp. 2d at 206 ("The parties have not sufficiently addressed the *Polaroid* factors to enable the Court to make a determination, as a matter of law, that there is no likelihood of confusion.").

[169] Plaintiffs dispute defendants' claim that their prices range from about $29.99 to $179.99, and argue that some of defendants' prices veer into the high end of the market. The record shows that the products at issue here are either sold at low prices or the prices are unknown.

[170] Plaintiffs produced evidence that a few consumers brought counterfeit jewelry purchased from third parties – but not defendants – to one of plaintiffs' stores for repair. *See* Def. 56.1 ¶¶ 36-37, 60 (citing Third Party Counterfeit Jewelry, Ex. H to Def. 56.1, at 59-60, 96).

defendants' – or that the jewelry was somehow affiliated.[171]  The questions that remain regarding the likelihood of confusion preclude a summary disposition as to Cartier's trademark infringement claims regarding the four of defendants' products described above, and as to Gucci's trademark infringement claim.

## C.     Fair Use of Plaintiffs' Brand Name Trademarks Under the Lanham Act and New York State Law

Defendants argue that they are entitled to summary judgment on plaintiffs' claims for trademark infringement, false designation of origin, trademark dilution, common law unfair competition, trade dress infringement, and New York State unfair competition and dilution under New York General Business Law § 360-1, because their use of plaintiffs' brand name marks constitutes nominative fair use.[172]  Plaintiffs allege that defendants' use of their brand names throughout defendants' website infringes their trademarks.  However, defendants assert that they use the brand names only for purposes of description and comparison, a use they claim is protected.[173]

---

[171]     *See* Def. 56.1 ¶ 14 (citing Yahoo! customer reviews, Ex. A to Def. 56.1, at 232-33, 376-78).

[172]     *See* Def. Mem at 16.

[173]     *See id.*

50

As stated previously, the doctrine of nominative fair use protects the commercial use of another's trademark as long as the user does not use the mark to refer to its own products, use the mark more than is necessary to identify the product, or use the mark in a way that suggests sponsorship by the owner of the mark.[174] It was developed when the New Kids on the Block, a popular boy band in the early 1990's, sued two newspapers for their use of the band's name in polls asking readers, who had to pay to call in with their response, which of the "New Kids" was their favorite.[175] The Ninth Circuit held that the newspapers' use of the band's mark was protected because they did not use it to refer to their own products, there was no other way to identify the band, which was the subject of the polls, and because there was nothing to suggest that the New Kids themselves sponsored the poll.[176]

Defendants' use of plaintiffs' brand names on their website is different from the use of the New Kids' name in the newspapers' polls in several ways that make the applicability of the nominative fair use defense less clear. Defendants use plaintiffs' brand names to highlight the similarity of their own

---

[174]   *See S&L Vitamins,* 521 F. Supp. 2d at 206.

[175]   *See New Kids on the Block*, 971 F.2d at 304.

[176]   *See id.*

51

products to those sold by plaintiffs. For example, products are advertised as

"Cartier-esque " or "Bulgari-esque," and as "inspired by" or "replicas of"

Plaintiffs' brands.[177] The use of plaintiffs' brand names to describe defendants'

own products, combined with the similarity of defendants' products to plaintiffs'

designs, may suggest or imply plaintiffs' sponsorship, endorsement or the

affiliation of defendants' products with those of plaintiffs. Defendants' "use is not

nominative if it creates a likelihood of confusion about the mark-holder's

affiliation or sponsorship."[178] The issue of whether consumers believe defendants'

"overstock" products are affiliated with those of plaintiffs – for example, that they

constitute plaintiffs' excess inventory now being sold by defendants at discounts

---

[177] *See* Def. 56.1 ¶ 3. Defendants represent that as of June 6, 2008, they no longer use the words "replica," "reproduction," "similar to," "copy," "faux," "fake," "imitation," "look-a-like," "made in the likeness of," "-esque," or "knockoff" to explain the similarity between their products and plaintiffs' jewelry. *See* 6/6/08 Letter from Defendants' Counsel Scott Zarin to Plaintiffs' Counsel Louis Ederer.

[178] *Chambers*, 2003 WL 749422, at *3. The parties dispute whether the third prong of the nominative fair use test, whether the user has done anything to suggest sponsorship or endorsement by the trademark holder, requires a full likelihood of confusion analysis. Courts also appear to differ on this question. *See id.*; *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006) (third prong involves likelihood of confusion analysis); *S&L Vitamins, Inc.*, 521 F. Supp. 2d at 207 (not applying likelihood of confusion analysis in third prong). Because the third prong is always a fact-intensive inquiry and summary judgment is inappropriate here, I need not resolve this question.

52

from list prices – involves fact determinations that are not suitable for summary disposition.[179]

In the alternative, defendants argue that plaintiffs have not established a prima facie case of the likelihood of confusion due to the use of plaintiffs' marks on defendants' website. Certain *Polaroid* factors, such as proximity of the products in the marketplace, do appear to weigh in favor of defendants. Yet plaintiffs have offered sufficient evidence to create an issue of fact regarding likelihood of confusion. Defendants' pervasive use of plaintiffs' brand names throughout their website, alone, creates a fact issue as to confusion. In addition, plaintiffs assert that defendants' product descriptions, which include statements that observers will believe the products sold on the website are "the real thing," would support an inference of post-sale confusion. Accordingly, defendants' motion for summary judgment on these claims is denied.

## D. Design Patent Infringement

---

[179]     *See S&L Vitamins, Inc.*, 521 F. Supp. 2d at 207 ("[T]here are genuine issues of material fact as to whether [defendant] has engaged in practices that suggest [plaintiff's] endorsement or sponsorship of the sale of the products on the websites.").

Plaintiffs also assert that defendants engaged in the unauthorized sale of colorable imitations of patented designs[180] owned by Yurman, Cartier, and Bulgari.[181] Plaintiffs argue that there is no genuine issue of material fact that (1) the designs are "substantially the same" as designs covered by their respective patents, and (2) the accused designs "appropriate the novelty" of their respective patents.[182] With respect to the first element, which is more stringent than the requirement of "substantial similarity" in the copyright context, defendants dispute that their designs are "substantially the same" as those owned by plaintiffs.

After a careful comparison of the drawings on plaintiffs' patent registrations and images of defendants' products, keeping in mind the stringent nature of the standard for patent infringement, I find that certain of the products are substantially the same as certain of plaintiffs' patented designs as a matter of law. These are: a watch-bracelet that is substantially the same as Cartier's

---

[180]    *See* Patent Nos. D371314, D388332, D424967, D538194, D543130, D338629, D434688, D545716.

[181]    *See* Pl. Mem. at 19. As of June 6, 2008, defendants have ceased selling each of the allegedly infringing products. *See* 6/6/08 Letter from Defendants' Counsel Scott Zarin to Plaintiffs' Counsel Louis Ederer, Ex. D to Zarin Decl.

[182]    *Sun Hill*, 48 F.3d at 1196-97. *Accord Lawman Armor Corp.*, 437 F.3d at 1384 (finding that factual disputes precluded summary judgment under the "ordinary observer" test).

ornamental design for a combined watch and bracelet;[183] three rings that are each

substantially the same as Cartier's ornamental design for a ring composed of three

intertwined bands;[184] and two circular pendants with a grid pattern that are both

substantially the same as Cartier's ornamental design for a pendant.[185] With

respect to appropriation of novelty, in ornamental designs such as these it is often

the overall combination of design elements, rather than a single identifiable

element, that is novel.[186] Because defendants' designs are for all purposes

---

[183]    *See* Comparison of U.S. Patent No. D388,332 with
Overstockjeweler.com Item No. BRT-WCRTT2, Ex. H to Dube Decl.

[184]    *See* Comparison of U.S. Patent No. D424,967 with
Overstockjeweler.com Item Nos. PK-273786596, PK-RR3597, and PK-Q-33-AY,
Ex. I to Dube Decl.  Although each of defendants' rings differs slightly in the
color and type of metal used as well as the placement of adornment such as cubic
zirconia, the structure and design of the rings are identical to the patented design.
The inquiry for patent design infringement compares the allegedly infringing
product to the patented design, not the "commercial embodiments of the two
products." *Rockport Co. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 193 (S.D.N.Y.
1999). Overstock.com Item No. PK-V2222 appears different from the patented
design, however, as the interlocking rings are thinner and do not overlap in the
manner shown in the patent registration, and thus it cannot be deemed infringing
as a matter of law.

[185]    *See* Comparison of U.S. Patent No. D543,130 with
Overstockjeweler.com Item Nos. SF-91663201 and PK-5778, Ex. K to Dube Decl.
However, Overstockjeweler.com Item No. PK-0819, which employs the same
cross-hatch design on a ring, cannot be deemed infringing as a matter of law
because the patent covers the design on a pendant only.

[186]    *See Rockport Co.*, 65 F. Supp. 2d at 195.

identical to these patented designs, there can be no dispute that they appropriate the novelty of each design. Therefore I find that these jewelry items infringe Cartier's patents.

With respect to the other products alleged to infringe plaintiffs' patented designs, a reasonable juror could find, based on certain differences, that defendants' products are not substantially the same such that an ordinary observer would be induced to purchase one product supposing it to be the other.[187] For example, a watch bracelet sold by defendants is similar to Yurman's patented design in most respects, but it does not have a similar closure and clasp – both of which are included in Yurman's patent.[188] Gemstones on a three-leaf "orchid" ring sold by defendants are not placed in the same pattern carefully drawn on Cartier's patent for its ornamental design.[189] The rings and earrings alleged to infringe Bulgari's patents do not share certain features – such as the name "Bulgari" printed on the earring or the number and angle of layers on the ring – that are key

---

[187]     See Def. Opp. Mem. at 10.

[188]     See Comparison of U.S. Patent No. D371,314 with Overstockjeweler.com Item No. MK-DY2t, Ex. M to Yurman Decl.

[189]     See Comparison of U.S. Patent No. D538,194 with Overstockjeweler.com Item No. PK-RCrt, Ex. J to Dube Decl.

features of Bulgari's designs.[190]  Because the Court cannot dispose of the claims

arising from these patents on summary judgment, it need not address the issue of

novelty.

### E.    Willfulness and Damages

Plaintiffs ask the Court to award maximum statutory damages for

design trademark infringement claims, maximum statutory damages for copyright

infringement claims, and treble damages for patent infringement claims.  Each of

these awards requires a showing of willfulness.[191]  They further seek an award of

costs and attorneys' fees, available in "exceptional cases."[192]

In a copyright action, the plaintiff bears the burden of proving

willfulness, measured by the infringer's "actual knowledge that it was infringing

---

[190]    *See* Comparison of Bulgari Patented Designs with
Overstockjeweler.com products, Exs. A, B, and C to Declaration of Costanzo
Rapone, Esq. in Support of Bulgari S.p.A.'s Motion for Partial Summary
Judgment.

[191]    *See* 15 U.S.C. § 1117(c)(2) (providing for statutory damages for
willful trademark counterfeiting); 17 U.S.C. § 504(c)(2) (providing for statutory
damages of up to $150,000 per copyrighted work where infringement is willful).
Treble damages are available for willful infringement of a patent under 35 U.S.C.
§ 284.  However, if a plaintiff alleging infringement of a design patent elects to
recover the infringer's profits rather than its own lost profits under 35 U.S.C. §
289, no enhancement of damages for willfulness is allowed.  Plaintiffs mistakenly
claim that they are entitled to treble damages under 35 U.S.C. § 289.

[192]    15 U.S.C. § 1117(a).

the plaintiffs' copyrights or . . . reckless disregard of the high probability" that it was infringing those copyrights.[193] An award of maximum statutory damages for trademark counterfeiting similarly requires actual knowledge of infringement or reckless disregard for the trademark owner's rights.[194]

Fact issues remain as to whether defendants willfully infringed plaintiffs' intellectual property rights. Plaintiffs assert that defendants' infringement was willful because they continued to sell products alleged to be infringing after plaintiffs filed suit, and that defendants do not always ask their suppliers if the products they purchased are infringing.[195] Yet defendants assert that they sought the advice of counsel before beginning to sell the jewelry at issue, posted multiple disclaimers on their website, and ceased selling a number of products in 2005 at Yurman's request. Because these assertions raise a genuine dispute as to defendants' willfulness, neither an enhanced damages award nor an award of costs and attorneys' fees are appropriate at this time, nor can summary judgment be granted to defendants on the issue of willfulness.

---

[193]   *NFL v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 475 (S.D.N.Y. 2001).

[194]   *See Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 396 (E.D.N.Y. 2008).

[195]   *See* Pl. 56.1 ¶¶ 70-71.

## F. False Advertising

Plaintiffs have asserted claims against defendants for false advertising. Defendants contend that the parties compete in separate markets, as demonstrated by the substantial price gap between their respective products.[196] Indeed, Castaneda testified that she did not regard any of the plaintiffs as her competitors.[197] Van Cleef & Arpels also stated that it did not view defendants as competitors, an assertion which is not disputed.[198] From this undisputed fact, it is reasonable to infer that none of the other plaintiffs are direct competitors of defendants. Accordingly, plaintiffs lack standing to bring this claim. Moreover, a competitive injury has not been sufficiently alleged or demonstrated by the evidence. Defendants' motion is granted on this claim.

## G. Consumer Fraud Under New York State Law

Plaintiffs have also asserted claims for deceptive trade practices. In order to prevail, plaintiffs must demonstrate that there is "consumer injury or harm to the public interest."[199] To do so, plaintiffs must show that "the public's health

---

[196] *See* Def. Mem. at 30.

[197] *See* Def. 56.1 ¶ 2 (citing 2/7/08 Castaneda Deposition, Ex. A to Def. 56.1).

[198] *See* Def. Mem. at 24; Def. 56.1 ¶ 2. *See also* Pl. 56.1 ¶¶ 1-60.

[199] *Securitron*, 65 F.3d at 264.

or safety is at stake as a result of the alleged infringement."[200]  Plaintiffs have provided no evidence that satisfies this requirement.  Accordingly, defendants' motion to dismiss this claim is granted.

## V.    CONCLUSION

For the reasons set forth above, plaintiffs' motion for partial summary judgment is granted as to certain claims for copyright infringement, trademark counterfeiting, and patent infringement and denied as to certain infringement claims.  Plaintiffs' motion for partial summary judgment as to defendants' counterclaim regarding cancellation of the Yurman copyright registrations is granted in part and denied in part.  Defendants' motion for partial summary judgment is granted as to false advertising and consumer fraud claims, but denied as to all other claims.  The Clerk of the Court is directed to close these motions [document no. 16 on the docket sheet for 07 Civ. 7862, and nos. 27, 35 on the docket sheet for 07 Civ. 1241].  A conference is scheduled for September 2, 2008, at 3:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          August 19, 2008

[200]    *See id.*

60

**- Appearances -**

**For Plaintiffs**:

Louis S. Ederer, Esq.
John Maltbie, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Defendants**:

Scott Zarin, Esq.
Zarin & Associates, P.C.
1775 Broadway, Suite 2300
New York, New York 10019
(212) 580-3131