```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

YURMAN STUDIO, INC. and YURMAN DESIGN INC.,

               **Plaintiffs,**

   - against -

ELENA CASTANEDA and EJEWELER LLC d/b/a OVERSTOCKJEWELER.COM,

               **Defendants.**

----------------------------------------------------------------X

CARTIER, a division of RICHEMONT NORTH AMERICA, INC., CARTIER INTERNATIONAL, N.V., CARTIER CREATION STUDIO, S.A., VAN CLEEF & ARPELS S.A., VAN CLEEF & ARPELS, INC., VAN CLEEF & ARPELS DISTRIBUTION INC., GUCCI AMERICA INC., and BULGARI S.p.A.,

               **Plaintiffs,**

   - against -

ELENA CASTANEDA and EJEWELER LLC d/b/a OVERSTOCKJEWELER.COM,

               **Defendants.**

----------------------------------------------------------------X

**OPINION AND ORDER**

07 Civ. 1241 (SAS)

07 Civ. 7862 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On August 19, 2008, this Court issued an Opinion and Order that granted in part plaintiffs' motion for summary judgment on their copyright, patent, and trademark infringement claims.[1] However, at that time the Court determined that lingering issues of fact precluded a finding that defendants had willfully violated plaintiffs' copyrights and trademarks, which would have entitled plaintiffs to enhanced statutory damages.[2]

Plaintiffs now bring a limited motion for statutory damages in light of ongoing infringement in the two-week period between the issuance of the August 19 Order and a conference on September 2, 2008. Plaintiffs also demand that costs and fees associated with bringing the instant motion be assessed against defendants' attorney in his individual capacity. For the reasons that follow, plaintiffs are awarded $18,000 in damages but are not awarded costs or fees.

## II.   BACKGROUND

This Court's August 19, 2008 Opinion and Order specifically found

---

[1]    *See Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241 and 07 Civ. 7862, 2008 WL 3861219, at *9-*14 (S.D.N.Y. Aug. 19, 2008).

[2]    *See id.* at *16.

that defendants Elena Castaneda and Ejeweler LLC had violated nine copyrights owned by Yurman Studio Inc. and/or Yurman Design Inc., one copyright owned by Cartier, Cartier International, N.V., and/or Cartier Creation Studio, S.A., and four copyrights owned by Gucci America Inc.[3] In addition, the Court found that defendants had used counterfeits of two trademarks owned by Cartier, Cartier International, N.V., and/or Cartier Creation Studio, S.A.[4]

Between the issuance of this Court's decision on August 19, 2008 and August 29, 2008, defendants continued to sell jewelry that infringed plaintiffs' copyrights and trademarks in the same manner as they had at the commencement of this case.[5] During that period, defendants' attorney failed to inform Castaneda of the twenty-eight particular jewelry items that infringed plaintiffs' copyrights and trademarks.[6] These items infringed on eight Yurman copyrights and four Gucci copyrights, and three categories of items violated a Cartier trademark: bracelets, rings, and a necklace.[7] After defendants' attorney informed them which

---

[3] *See id.* at *12 nn.149-50.

[4] *See id.* at *13 n.160.

[5] *See* 10/6/08 Declaration of Elena Castaneda ("Castaneda Decl.") ¶ 7.

[6] *See id.* ¶ 6.

[7] *See* Memorandum of Law in Support of Plaintiffs' Motion for an Award of Enhanced Statutory Damages ("Pl. Mem.") at 8-12.

3

particular items were infringing, defendants moved the items to a "Final Sale" web page.[8] Finally, after a status conference on September 2, 2008 at which plaintiffs brought the ongoing sale of infringing items to this Court's attention, defendants ceased selling the items entirely.[9] Defendants additionally removed twenty-one items that plaintiffs allege infringe on their exclusive rights, despite this Court's decision denying summary judgment concerning those particular items.[10]

## III. LEGAL STANDARDS

### A. Statutory Damages for Copyright Infringement

Under the Copyright Act, the owner of a registered copyright may elect to recover statutory damages for infringement of an exclusive right in the copyrighted work, as opposed to a calculation of actual damages and profits. Ordinarily a copyright owner may recover between $750 and $30,000 for all infringements of a single protected work.[11] However, if a court finds that infringement was willful, "the court in its discretion may increase the award of

---

[8] Castaneda Decl. ¶ 7.

[9] *See id.* ¶ 8.

[10] *See id.*

[11] *See* 17 U.S.C. § 504(c)(1). *See also* H.R. Rep. No. 94-1476, at 162 ("A single infringer of a single work is liable for a single amount . . . no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series.").

4

statutory damages to a sum of not more than $150,000."[12] "Willfulness in this context means that the defendant 'recklessly disregarded' the possibility that 'its conduct represented infringement.'"[13] On the other hand, where the "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200."[14]

A district court has "wide discretion" to grant an appropriate award within the statutory range.[15] Numerous factors may be consulted, including "'the expenses saved and profits reaped by the defendants, the revenues lost by the plaintiffs, the value of the copyright, the deterrent effect of the award on other potential infringers, and factors relating to individual culpability.'"[16] At the end of

---

[12] 17 U.S.C. § 504(c)(2).

[13] *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) (quoting *Hamil America Inc. v. GFI*, 193 F.3d 92, 97 (2d Cir. 1999)).

[14] *Id.*

[15] *Fitzgerald Publ'g Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116 (2d Cir. 1986).

[16] *Masterfile Corp. v. Country Cycling & Hiking Tours by Brooks, Inc.*, No. 06 Civ. 6363, 2008 WL 313958, at *2 (S.D.N.Y. Feb. 4, 2008) (quoting *Jett v. Ficara*, No. 04 Civ. 9466, 2007 WL 2197834, at *7 (S.D.N.Y. June 29, 2007)). In cases where willfulness is found, particular attention must be paid to the punitive aspect of statutory damages. *See Fitzgerald Publ'g*, 807 F.2d at 1117.

the day, "statutory damages should bear some relation to actual damages suffered."[17]

### B. Statutory Damages for Trademark Infringement

The Lanham Act similarly allows the owner of a registered trademark to elect to recover statutory damages for use of a counterfeit mark. Specifically, the Act allows an award between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold."[18] In cases of willful infringement, the cap on statutory damages per mark is increased ten-fold to $2,000,000.[19] "'[W]illful infringement may be attributed to the defendant's actions where [s]he had knowledge that h[er] conduct constituted infringement or where [s]he showed a

---

[17] *RSO Records v. Peri*, 596 F. Supp. 849, 862 (S.D.N.Y. 1984). *Accord New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 303 (S.D.N.Y. 2001) ("[S]tatutory damages should be commensurate with the actual damages incurred and, thus, the proper departure point is [defendant's] stipulated gross revenue."). *See generally* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][1], at 14-90 (2005) ("The point is not that statutory damages always need to fall beneath other measurements, but rather that they should be woven out of the same bolt of cloth as actual damages.").

[18] 15 U.S.C. § 1117(c)(1). The term "type of goods" denotes not a single model or item but rather a category of items such as handbags, wallets, or belts. *See Gucci America, Inc. v. MyReplicaHandbag.com*, No. 07 Civ. 2438, 2008 WL 512789, at *4 (S.D.N.Y. Feb. 26, 2008).

[19] *See* 15 U.S.C. § 1117(c)(2).

reckless disregard for the owner's rights.'"[20]

A court has broad discretion to tailor a statutory damages award for use of a counterfeit trademark, as it "considers just."[21] "In the absence of any guidelines for determining the appropriate award in a case involving a willful trademark violation, courts have looked for guidance to the better-developed case law regarding an analogous provision of the Copyright Act of 1976."[22] Therefore the same factors discussed above regarding statutory damages for copyright infringement may be applied concerning use of a counterfeit trademark.

### C. Fees and Costs Under the Copyright Act and the Lanham Act

Section 505 of the Copyright Act permits a "court in its discretion" to award costs and attorneys fees "to the prevailing party" in litigation under the Act.[23] The decision to award costs and fees may take into account punitive or

---

[20] *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 396 (E.D.N.Y. 2008) (quoting *Tony Jones Apparel, Inc. v. Indigo USA LLC*, No. 03 Civ. 280, 2005 WL 1667789, at *8 (N.D. Ill. July 11, 2005)).

[21] 15 U.S.C. § 1117(c)(1). *Accord Gucci Am. Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 522 (S.D.N.Y. 2007) (noting a district court's "broad discretion to award statutory damages").

[22] *Ontel Products Corp. v. Amico Intern. Corp.*, No. 07 Civ. 7356, 2008 WL 4200164, at *2 (S.D.N.Y. Aug. 19, 2008).

[23] 17 U.S.C. § 505.

deterrent policies.[24] Similarly, the Lanham Act provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party."[25] The term "exceptional cases" is understood to include fraud, bad faith, or willful infringement.[26]

### D. Counsel's Liability for Excessive Costs

Section 1927 of title 28 of the United States Code states, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[27] "'Section 1927 authorizes the imposition of sanctions only 'when there is a finding of conduct constituting or akin to bad faith.'"[28]

---

[24]   *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001).

[25]   15 U.S.C. § 1117(a).

[26]   *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003).

[27]   28 U.S.C. § 1927.

[28]   *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) (quoting *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997)). *Accord In re 60 East 80th Street Equities*, 218 F.3d 109, 115 (2d Cir. 2000) ("'We have held that an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" (quoting

Section 1927 does not include an express requirement that the party seeking sanctions provide notice and an opportunity to correct the sanctionable action.[29] Nevertheless, "notice and an opportunity to respond is necessary prior to the imposition of '*any* kind of sanctions.'"[30]

## IV. DISCUSSION

### A. Willful Infringement

It is beyond cavil that defendants willfully continued to sell goods infringing on plaintiffs' copyrights and trademarks. Even giving defendants the benefit of the doubt for the period during which defendants' attorney failed to inform his clients of the specifics of this Court's ruling, there is simply no excuse for the continued sale of the infringing items after defendants received notice on August 29, 2008.[31] The placement of such items on a "final sale" web site

---

*United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991))).

[29] *Cf.* Fed. R. Civ. P. 11(c)(2) (requiring a twenty-one-day notice period between service and filing with the court).

[30] *In re Stein*, 127 F.3d 292, 294 (2d Cir. 1997) (quoting *Ames Dep't Stores, Inc. v. Zayre Cent. Corp.*, 76 F.3d 66, 70 (2d Cir. 1996)). *Accord Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 936 (2d Cir. 1992) (directly addressing section 1927 sanctions), *abrogated on other grounds, Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000).

[31] Nor was notice provided by defense counsel framed in a way that would allow a reasonable reader to assume any kind of grace period. *See* 8/29/08

provides definitive proof that defendants knew the items had been deemed infringing; thus their sale became unlawful by the simplest understanding of copyright and trademark law.[32] Nevertheless defendants continued to sell the infringing goods at discounted prices in an attempt to recover the investment in counterfeit items.

As a result, this Court must punish defendants for willful infringement during the limited period between August 29, 2008 and September 2, 2008. However, statutory damages cannot be divorced entirely from economic reality. Congress's decision to dramatically increase the cap on statutory damages reflected the increasing role of intellectual property in the American economy and the difficulty of controlling reproduction of digital works,[33] but it does not require imposition of monumental statutory damages against smaller-scale or shorter-term

---

E-mail from Scott Zarin, defense counsel, to Elena Castaneda, Ex. A. to 10/28/08 Declaration of Louis Ederer, plaintiffs' counsel ("2d Ederer Decl.") ("The Court's order requires that you remove the following items from the web-site . . . ."). This Court's orders are neither optional nor subject to delay until a litigant has taken measures to reduce the cost of compliance.

[32] *See* 15 U.S.C. § 1125 (forbidding use of a false designation); 17 U.S.C. § 106(3) (limiting the right to sell copyrighted works to the owner of the copyright).

[33] *See* 145 Cong. Rec. S15228, S15229 (Dec. 3, 1999) (statement of Sen. Leahy).

willful infringers.

        This Court must also look to factors beyond willfulness to determine an appropriate award. A court must first look to the expenses saved and profits reaped by the defendant. While defendants undoubtedly avoided expenses by exploiting the design expertise and cachet carried by defendants' designs and marks, their sales records note prices that are less than ten percent of the retail price of the jewelry defendants copied, albeit at margins of 150 to 300 percent above the wholesale cost of the fakes.[34] Moreover, defendants' sales records indicate total sales of $142,947.70 for the infringing items from December 2004 to May 2007, a total of thirty months.[35] Even assuming greater-than-average sales over Labor Day weekend, it is unlikely that defendants had more than $5,000 in gross sales over the five-day period of willful infringement, let alone net profit.

        Next, a court looks to plaintiffs' losses caused by the infringing acts. Plaintiffs have not submitted specific evidence of losses, and it is highly unlikely

---

[34] *Compare* 2/7/08 Sales Charts ("Collected Sales Charts"), Ex. G to 10/6/08 Declaration of Scott Zarin, defendants' attorney, at 1 (noting a "David Yurman Albion Inspired Cushion Cut Double Cable Ring selling for $49.99, as well as a cost to defendants of $18 per item) *with* Neiman Marcus, *Albion Cushion Ring, 14mm*, http://www.neimanmarcus.com/store/catalog/prod.jhtml?-itemId=prod39580001 (noting a price of $1200 or $1300 for a similar product).

[35] *See* Collected Sales Charts 2, 4, 6.

that plaintiffs lost substantial revenue based on defendants' infringing activities. Given that the prices of plaintiffs' goods so greatly exceeds the prices of the infringing items on defendants' website, they do not compete in the same market.[36] Moreover by selling obvious knock-offs, counterfeiters both build brand or design recognition and reaffirm the higher value of an authentic piece.[37] It is entirely possible that the existence of imitations such as the pieces for sale on defendants' website in fact *increase* the profits of the designers who they flatter.

This Court must also look to the value of plaintiffs' copyrights and the deterrent effect of the award on other potential infringers. Both of these factors counsel in favor of a punitive award. Plaintiffs' copyrights are extremely valuable, key components of businesses that generate hundreds of millions of dollars in revenues per year.[38] Moreover, a larger award would promote general

---

[36] *See* Jonathan M. Barnett, *Shopping for Gucci on Canal Street: Reflections on Status Competition, Intellectual Property, and the Incentive Thesis*, 91 Va. L. Rev. 1381, 1389-91 (2005) (distinguishing between "snob" and "aspirational" consumers of luxury goods).

[37] *See Louis Vuitton Malletier v. Dooney & Bourke Inc.*, 340 F. Supp. 2d 415, 448 (S.D.N.Y. 2004); Barnett, *supra* note 36, at 1399-1402 (describing how the existence of counterfeits may increase the "snob premium").

[38] *See, e.g.*, Denise Power & Cate T. Corcoran, *Brands Refashion Business with Tech.*, Women's Wear Daily, July 11, 2007, at 12 (describing David Yurman Inc. as a $500 million per year business).

deterrence of lawless sales of counterfeit luxury goods.

Therefore, this Court awards plaintiffs $1,500 per copyright upon which defendants infringed and $2,000 for each category of goods that defendants sold that were marked with plaintiffs' trademarks. As noted above, defendants infringed on eight copyrights owned by plaintiffs and used Cartier's mark on three categories of goods. This yields a total damage award of $18,000 for this limited period of willful infringement. Moreover, this damages award is sufficiently punitive to deter short-term acts of willful infringement.[39]

This ruling does not address the damages requested by plaintiffs for the entire period of infringement, as plaintiffs have not yet requested such a determination. However plaintiffs may not seek further damages until all contested questions of infringement are resolved, absent evidence of further willful infringement or a violation of the preliminary injunction that has now been entered against defendants.

### B. Costs and Fees

Plaintiffs' moving papers requested that this Court award costs and

---

[39] Moreover, this Court finds plaintiffs' request for $840,000 in damages related solely to the two-week period at issue in this motion both excessive and based on an incorrect understanding of the "per work" rule of statutory copyright damages and the "per category" rule of statutory trademark damages.

fees related to bringing this motion as an additional penalty against defendants.[40] However, plaintiffs' modified this request in their reply brief by demanding that this Court assess those fees solely against defense counsel.[41] Because plaintiffs no longer seek costs and fees against defendants, this Court will not grant costs and fees under the Copyright Act and the Lanham Act.

On the other hand, plaintiffs' request for fees and costs from defendants' counsel pursuant to section 1927 *only* appeared in their reply memorandum. Therefore, defendants' counsel was not afforded sufficient notice and an opportunity to respond to this request for sanctions. As a result, this Court must deny plaintiffs' request for sanctions against defense counsel without prejudice.

## V. CONCLUSION

For the foregoing reasons, plaintiffs are awarded $18,000 in damages but are not awarded fees or costs. The Clerk of the Court is directed to close this motion (docket no. 56 in case 07 Civ. 1241and docket no. 35 in case 07 Civ.

---

[40] *See* Pl. Mem. at 13-14.

[41] *See* Reply Memorandum of Law in Further Support of Plaintiffs' Motion for an Award of Enhanced Statutory Damages, at 6-7 ("Plaintiffs wish to modify their application for costs and fees on this motion[] and ask that those costs and fees be assessed against Zarin personally.").

14

7862).  A conference is scheduled for December 17, 2008, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           November 19, 2008

- **Appearances** -

**For Plaintiffs:**

Louis S. Ederer, Esq.
John Maltbie, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Defendants**:

Scott Zarin, Esq.
Zarin & Associates, P.C.
1775 Broadway, Suite 2300
New York, New York 10019
(212) 580-3131