UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

YURMAN STUDIO, INC. and YURMAN DESIGN
INC.,

               Plaintiffs,

    - against -

ELENA CASTANEDA and EJEWELER LLC d/b/a
OVERSTOCKJEWELER.COM,

              Defendants.

**OPINION
AND ORDER**

**07 Civ. 1241 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/23/09

------------------------------------------------------------------X

CARTIER, a division of RICHEMONT NORTH
AMERICA, INC., CARTIER INTERNATIONAL,
N.V., CARTIER CREATION STUDIO, S.A., VAN
CLEEF & ARPELS S.A., VAN CLEEF & ARPELS,
INC., VAN CLEEF & ARPELS DISTRIBUTION
INC., GUCCI AMERICA INC., and BULGARI
S.p.A.,

              Plaintiffs,

    - against -

ELENA CASTANEDA and EJEWELER LLC d/b/a
OVERSTOCKJEWELER.COM,

              Defendants.

**07 Civ. 7862 (SAS)**

------------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.    INTRODUCTION

On August 19, 2008, this Court issued an Opinion and Order granting in part plaintiffs' motion for summary judgment on their copyright, patent, and trademark infringement claims.[1]  However, at that time, the Court determined that lingering issues of fact precluded a finding that defendants had willfully violated plaintiffs' copyrights and trademarks, which would have entitled plaintiffs to enhanced statutory damages.[2]

Plaintiffs then brought a limited motion for statutory damages in light of ongoing infringement in the two-week period between the issuance of the August 19 Order and a conference on September 2, 2008.  Plaintiffs also demanded that costs and fees associated with bringing that motion be assessed against defendants' attorney in his individual capacity.  In an Opinion and Order dated November 19, 2008, plaintiffs were awarded $24,000 in damages but the Court denied the request for costs and fees without prejudice.[3]  Plaintiffs now

---

[1]     *See Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241 and 07 Civ. 7862, 2008 WL 3861219, at *9-*14 (S.D.N.Y. Aug. 19, 2008).

[2]     *See id.* at *16.

[3]     *See Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241 and 07 Civ. 7862, 2008 WL 4949775, at *4 (S.D.N.Y. Nov. 19, 2008).  The statutory damages

renew their motion for costs and fees.  For the following reasons, plaintiffs'

motion for costs and fees against defendants pursuant to Section 505 of the

Copyright Act and Section 1117(a) of the Lanham Act is denied.  Plaintiffs'

motion for costs and fees against defendants' former counsel, Scott Zarin,[4]

pursuant to section 1927 of title 28 of the United States Code is also denied.[5]

## II.    BACKGROUND

Despite the issuance of this Court's Opinion and Order on August 19,

2008, finding that defendants had infringed on the copyrights of Yurman Studio

Inc. and/or Yurman Design Inc., Cartier, Cartier International, N.V., and/or Cartier

Creation Studio, S.A., and Gucci America Inc., defendants continued – from

August 19, 2008 to August 29, 2008 – to sell jewelry that infringed plaintiffs'

copyrights and trademarks in the same manner as they had at the commencement

of this case.[6]  During that ten-day period, defendants' attorney failed to inform

---

award was amended from $18,000 to $24,000 after the opinion was published.

[4]     Zarin withdrew as counsel for defendants on December 1, 2008.

[5]     Plaintiffs also argue that the Court can impose sanctions or order the
sharing of such costs and fees between Zarin and defendants according to its
inherent powers. *See* Memorandum of Law in Support of Plaintiffs' Motion for an
Award of Costs and Fees Incurred in Connection with their Motion for Statutory
Damages ("Pl. Mem. for Costs and Fees") at 5-6.

[6]     *See* 10/6/08 Declaration of Elena Castaneda ("10/6/08 Castaneda
Decl.") ¶ 7.

defendants of the twenty-eight particular jewelry items that this Court found infringed plaintiffs' copyrights and trademarks.[7] These items infringed on eight Yurman copyrights and four Gucci copyrights, and three categories of items violated a Cartier trademark: bracelets, rings, and a necklace.[8]

After defendants' counsel informed them which particular items were infringing on August 29, 2008, defendants – instead of removing the items completely – moved the items to a "Final Sale" web page.[9] Finally, after a status conference on September 2, 2008 at which plaintiffs brought the ongoing sale of infringing items to this Court's attention, defendants ceased selling the items entirely.[10] Defendants additionally removed twenty-one items that plaintiffs allege infringe on their exclusive rights, despite this Court's decision denying summary judgment concerning those particular items.[11]

In defendants' opposition to plaintiffs' motion for statutory damages,

---

[7]     See id. ¶ 6.

[8]     See Memorandum of Law in Support of Plaintiffs' Motion for an Award of Enhanced Statutory Damages ("Pl. Mem. for Enhanced Damages") at 8-12.

[9]     10/6/08 Castaneda Decl. ¶ 7.

[10]     See id. ¶ 8.

[11]     See id.

4

Zarin argued that plaintiffs' motion should be stricken because the filing of the
motion had not been approved by the Court.[12]  Zarin further contended that
because plaintiffs had requested permission to conduct additional discovery on the
willfulness issue, he had believed that plaintiffs were planning to make one
combined motion regarding willfulness at a later time.[13]  By filing a separate
motion solely for the period from August 19, 2008 to September 2, 2008, Zarin
argued that plaintiffs were unnecessarily creating work for the Court and
increasing defendants' attorney's fees.[14]  Zarin therefore requested that the Court
award costs and fees to defendants for having to oppose the motion.[15]

## III.   LEGAL STANDARDS

### A.   Fees and Costs Under the Copyright Act and the Lanham Act

Section 505 of the Copyright Act permits a "court in its discretion" to
award costs and attorneys fees "to the prevailing party" in litigation under the

---

[12]   *See* Defendant Castaneda and Ejeweler's Opposition to Plaintiffs'
Motion for an Award of Enhanced Statutory Damages at 9-10.

[13]   *See id.* at 10.

[14]   *See id.* at 11.

[15]   *See id.*

5

Act.[16]  The decision to award costs and fees may take into account punitive or

deterrent policies.[17]  Other factors to consider may include "'frivolousness,

motivation, objective unreasonableness [] and the need in particular circumstances

to advance considerations of compensation and deterrence.'"[18]  In addition, a court

may also consider the relative financial strength of the parties in its determination

of whether to award costs and fees.[19]

      Similarly, the Lanham Act provides that "the court in exceptional

cases may award reasonable attorney fees to the prevailing party."[20]  The term

"exceptional cases" is understood to include fraud, bad faith, or willful

infringement.[21]

### B.   Counsel's Liability for Excessive Costs

---

[16]   17 U.S.C. § 505.

[17]   *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142,
151 (2d Cir. 2001).

[18]   *Id.* at 147 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19
(1994)).

[19]   *See Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546
F. Supp. 2d 120, 132 (S.D.N.Y. 2008).

[20]   15 U.S.C. § 1117(a).

[21]   *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d
Cir. 2003).

Section 1927 of title 28 of the United States Code states, "Any

attorney . . . who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct."[22]

"This provision is designed to deter unnecessary delays in litigation by imposing

upon attorneys an obligation to avoid dilatory tactics."[23]  "Bad faith is the

touchstone of an award under this statute."[24]  Before awarding costs and fees under

this statute, "'the trial court must find clear evidence that (1) the offending

[attorney's] claims were entirely meritless and (2) the [attorney] acted for

improper purposes.'"[25]

## C.    The Court's Inherent Powers

---

[22]    28 U.S.C. § 1927.

[23]    *People of State of New York by Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996).

[24]    *Revson v. Cinque & Cinque*, 221 F.3d 71, 79 (2d Cir. 2000) (quoting *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

[25]    *Id.* (quoting *Agee v. Paramount Commc'ns. Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)).  *Accord In re 60 East 80th Street Equities*, 218 F.3d 109, 115 (2d Cir. 2000) ("'We have held that an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'") (quoting *International Bhd. of Teamsters*, 948 F.2d at 1345).

"'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'"[26]  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[27]  Thus, a Court "may [assess attorney's fees against the responsible party] when that party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'"[28]

"A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees."[29]  Furthermore, while a court "ordinarily should rely on the Rules rather than the inherent power," if "neither the statute nor the Rules are up to the task, the court may safely rely on its

---

[26]     *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)).

[27]     *Id.* (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

[28]     *Id.* at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). *Accord United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000) (holding that when a court is considering attorney's fees as sanctions, the court is required to make an "explicit finding" that the offending party acted in bad faith).

[29]     *Id.* at 50 (citation omitted).

8

inherent power."[30]

## IV.   DISCUSSION

### A.   Costs and Fees from Defendants

Plaintiffs' motion for costs and fees against defendants is denied.

The Court has already awarded plaintiffs $24,000 in statutory damages after it

found, in its November 19, 2008 Opinion and Order, that defendants had willfully

infringed plaintiffs' copyrights for the period between August 29, 2008 and

September 2, 2008.  This award was granted after careful consideration of whether

the amount would serve to effectively deter defendants from engaging in further

misconduct and the financial impact of such award on defendants' business.[31]

While the Court is cognizant that on numerous previous occasions,

defendants have failed to keep their promises to cease infringing conduct, the

Court is nevertheless satisfied that the statutory damages that have been awarded

to plaintiffs are sufficient to punish and deter defendants from continuing this

---

[30]     *Id.*

[31]     *See Yurman Studio*, 2008 WL 4949775, at *3-*4 (discussing
defendants' gross sales, plaintiffs' lost profits, and the potential deterrent effect of
imposing the sanctions).

9

conduct.[32]  In fact, Castaneda has informed the Court that she has ceased selling

the products of which plaintiffs complain, including products related to claims on

which the Court declined to grant summary judgment for plaintiffs.[33]  A further

assessment of costs and fees may prove to be far more punitive than necessary and

would likely accomplish little.  Therefore, plaintiffs' motion for costs and fees

with respect to defendants is denied.

### B.    Costs and Fees from Zarin

Plaintiffs' motion for costs and fees against Zarin is also denied, but

for different reasons. Plaintiffs argue that Zarin should be ordered to pay the costs

and fees associated with making the motion for statutory damages because (1) he

made the "outrageous" argument in his opposition papers that plaintiffs' motion

was not approved by the Court and that plaintiffs should thus be ordered to pay

defendants' attorney's fees for having to oppose the motion; and (2) he failed to

read the August 19, 2008 Opinion and Order in a timely manner and advise his

---

[32]     Indeed, Elena Castaneda notes that her sale of 29 items from August
29, 2008 to September 2, 2008 resulted in a total revenue of $174.00, which in
turn resulted in no more than $40.00 of profit. *See* 1/14/09 Declaration of Elena
Castaneda ¶ 3.  A $24,000 damages award is surely sufficient to remind
defendants that a continuation of their infringing conduct will not benefit anyone.
Also, it is significant that a preliminary injunction has been entered in this case.
Any violation of that order has and will result in a finding of contempt.

[33]     *See* 10/6/08 Castaneda Decl. ¶ 8.

client which items the Court had held to infringe plaintiffs' copyrights and trademarks.[34]

### 1.   Zarin's Argument that Plaintiffs' Motion Should Be Stricken

Plaintiffs' first complaint – that Zarin caused plaintiffs "to needlessly [] devote much of their reply papers to addressing" the "outrageous" arguments he made in defendants' opposition papers – fails as a ground upon which to grant costs and fees. The arguments that Zarin made in response to plaintiffs' motion were colorable, and they do not appear to have been made for an improper purpose. Zarin explains that he did not have the impression – upon leaving the September 2, 2008 conference – that the Court had approved plaintiffs' filing of a separate motion for statutory damages for the period between August 19, 2008 and September 2, 2008.[35] He appears to have been further confounded when he received a letter from plaintiffs' counsel informing him that the Court had decided a pre-motion conference was unnecessary and that counsel wanted to negotiate a mutually agreeable briefing schedule.[36] He believed that one

---

[34]   Pl. Mem. for Costs and Fees at 2.

[35]   *See* Counsel Scott Zarin's Opposition to Plaintiffs' Motion for Attorney Fees Pursuant to 28 U.S.C. § 1927 ("Zarin Mem.") at 8 n.2.

[36]   *See id.* at 9 n.3.

motion regarding the question of defendants' willfulness would suffice.[37]  While

Zarin's continued belief that he had not been given the opportunity to discuss

plaintiffs' filing of the statutory damages motion[38] is questionable – especially

after his review of the transcript of the September 2, 2008 conference[39]– his

attempt to defeat plaintiffs' motion by making this procedural argument was not

taken in bad faith, nor was it meritless.[40]

---

[37]     *See id.*

[38]     *See id.* at 8 (". . . no discussion of a motion regarding statutory damages for the discrete period of time between August 19th and August 29th occurred during the September 2, 2008 Court conference . . . ."). *See also id.* at 9 n.3 ("Having been deprived of this opportunity [to argue to the Court that a motion for statutory damages should be postponed until the case was over] by Plaintiffs' counsel's swift filing of the motion before Counsel Zarin had knowledge of his discussion with the Court, however, Counsel Zarin was forced to raise [the argument that plaintiffs' motion be stricken] in Defendants' response to that motion.").

[39]     *See id.* at 8 n.2; Transcript of September 2, 2008 Conference at 2:18-3:12 ("MR. EDERER: . . . The first [issue] has to do with your decision and order of August 19 in which you [] found[] that 37 individual designs being sold by the defendant are infringing.  We noticed last week that those items were still being sold on the defendants' website.  We thought maybe it was just, over the passage of time, they would take them down.  This morning we went on the website again and found that those items, those specific 37 items have been put on, quote/unquote, final sale. . . . THE COURT: Well, it seems to me that it goes to damages.  Every day that it's on, you seek damages.  Right? . . . And so we may [] need to move to the damages phase of those 37 immediately.  MR. EDERER: Perhaps we should.  THE COURT: Yes, I'm open to that idea . . . .").

[40]     While plaintiffs' motion for statutory damages against defendants was discussed during the September 2, 2008 conference, the Court acknowledges that

And while plaintiffs complain that they had to "devote much of their reply papers" in that motion to addressing Zarin's arguments, there was certainly no need to do so.  A quick reference to the transcript of the September 2, 2008 conference showing that Zarin was incorrect in his statements that he was not involved in any discussion regarding the filing of that motion would have sufficed. Instead, plaintiffs decided to devote four and a half pages of their ten-page reply brief to modifying their motion for costs and fees and explaining in painstaking detail Zarin's alleged failings.[41]  Plaintiffs have only themselves to blame for that.

### 2.    Zarin's Failure to Review the August 19, 2008 Opinion and Order in a Timely Manner

Plaintiffs' second complaint – Zarin's tardiness in reviewing the Court's August 19, 2008 Opinion and Order and timely advising his clients – is more serious but nevertheless cannot result in a sanction under either section 1927 or the Court's inherent powers.  Zarin explained that he did not review the August

---

it was not crystal clear that it would entertain a separate motion by plaintiffs for the period of infringement from August 19, 2008 until September 2, 2008.  Zarin's position is therefore understandable.

[41]    *See* Reply Memorandum of Law in Further Support of Plaintiffs' Motion for an Award of Enhanced Statutory Damages at 6-10.  Plaintiffs had requested costs and fees from the defendants in their moving papers. *See* Memorandum of Law in Support of Plaintiffs' Motion for an Award of Enhanced Pl. Mem. for Enhanced Damages at 13-14.  They then decided to modify this request in their reply papers, seeking costs and fees only from Zarin.

19, 2008 Opinion and Order immediately because he was in the process of moving offices the week after the Opinion and Order was issued and, as a solo practitioner, had not had the time nor the manpower to properly analyze the Opinion.[42]

There is no doubt that Zarin failed to act properly in the days after the August 19, 2008 Opinion and Order.  He explains that he first saw the August 19, 2008 Opinion and Order on August 21 and that he had "briefly perused" the opinion that day.[43]  On August 22, he telephoned Castaneda to inform her that the Court had found some of her products to infringe plaintiffs' copyrights and designs.[44]  However, because he had not yet carefully reviewed the opinion, he declined to specify which items she should remove from her website, informing her instead that a conference was scheduled for September 2 and that he believed this conference would "shed light" on when the infringing items should be removed.[45]

During the week of August 25, Castaneda left Zarin a number of

---

[42]    *See* 10/6/08 Declaration of Scott Zarin ("10/6/08 Zarin Decl.") at ¶ 3.

[43]    *See* 10/6/08 Zarin Decl. ¶ 2.

[44]    *See id.* ¶ 4.

[45]    *See id.* ¶ 5.

voicemails, but these calls were apparently not returned.[46]  In addition, Castaneda

emailed Zarin on August 26, following up on the call she received from Zarin, and

asking which items needed to be removed so that she could "liquidate" them.[47]

Zarin responded on August 27 that he would respond "shortly."[48]  It was not until

August 29 that Zarin provided Castaneda with a detailed list of items to remove.[49]

Whatever the reasons for his lack of communication with his client,

his failure to review the opinion, respond to his client's questions, and advise her

clearly until August 29 hampered the enforcement of the Court's order.  In

addition, his delay in relaying to his clients which products they should stop

selling gave them little time with which to comply with the Court's findings in the

Opinion and Order and subjected them to penalties.  In fact, it is possible that if

Zarin had acted properly, the motion for statutory damages would not have been

---

[46]     See id. ¶ 6.

[47]     See Email chain between Castaneda and Zarin ("8/26/08 Email
Chain"), Ex. F to 1/9/09 Declaration of Scott Zarin.  Castaneda also informed
Zarin that her company had "already [set up] the page." Id.  Zarin appears not to
have understood that Castaneda was still intending to sell the items, albeit at a
marked discount, arguing that he believed "liquidate" to mean "get rid of" or
"dispose of" rather than sell.  Zarin Mem. at 12.

[48]     See 8/26/08 Email Chain.

[49]     See id.

15

filed.[50]  Nevertheless, Zarin's conduct – while irresponsible – cannot be said to

have been committed in bad faith, a finding that is required in order for this Court

to sanction Zarin under either section 1927 or the Court's inherent powers.  I

therefore decline to sanction Zarin.

## V.   CONCLUSION

For the foregoing reasons, plaintiffs' motion for costs and fees against

defendants and Zarin is denied.[51]  The Clerk of the Court is directed to close this

motion (docket no. 83 in case 07 Civ. 1241 and docket no. 53 in case 07 Civ.

---

[50]     The Court notes Zarin's remark in his opposition papers to this
motion that the Court had "sustained" his explanation for failing to advise his
client during this ten-day period because the Court did not sanction defendants for
that period.  *See* Zarin Mem. at 6-7.  That the Court declined to sanction
defendants during that period did not mean that the Court accepted Zarin's excuse.
Rather, the Court declined to find that defendants had acted willfully in their
infringement of plaintiffs' copyrights during that time.

[51]     Zarin requests that this Court order plaintiffs' counsel to "cease
communicating with him in any way."  *See* Zarin Mem. at 14-15.  Because Zarin
still retains files in this case, this Court declines to do so.  However, this is the
only purpose for which plaintiffs' counsel may contact Zarin.

7862).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 23, 2009

17

# - Appearances -

**For Plaintiffs:**

Louis S. Ederer, Esq.
John Maltbie, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Defendants:**

Paul Felix Millus, Esq.
Snitow Kanfer Holtzer & Millus LLP
575 Lexington Avenue
New York, New York 10022
(212) 317-8500

**For Scott Zarin:**

Scott Zarin, Esq.
Zarin & Associates, P.C.
1775 Broadway, Suite 2300
New York, New York 10019
(212) 580-3131