**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

**YURMAN STUDIO, INC. and YURMAN DESIGN INC.,**

                    **Plaintiffs,**

                    **- against -**

**ELENA CASTANEDA and EJEWELER LLC d/b/a OVERSTOCKJEWELER.COM,**

                    **Defendants.**

------------------------------------------------------------------X

**CARTIER, a division of RICHEMONT NORTH AMERICA, INC., CARTIER INTERNATIONAL, N.V., CARTIER CREATION STUDIO, S.A., VAN CLEEF & ARPELS S.A., VAN CLEEF & ARPELS, INC., VAN CLEEF & ARPELS DISTRIBUTION INC., GUCCI AMERICA INC., and BULGARI S.p.A.,**

                    **Plaintiffs,**

                    **- against -**

**ELENA CASTANEDA and EJEWELER LLC d/b/a OVERSTOCKJEWELER.COM,**

                    **Defendants.**

------------------------------------------------------------------X

**OPINION
AND ORDER**

**07 Civ. 1241 (SAS)**



**07 Civ. 7862 (SAS)**

1

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On October 31, 2008, this Court entered a preliminary injunction, enjoining Overstockjewelers.com ("Overstock") and Elena Castaneda, President of Overstock, from using plaintiffs' trademarks on Overstock or any other website.[1] The injunction also prohibited the defendants from using terms similar to "knock off" or "imitation" when referencing products that were previously marketed as replicas of plaintiffs' designs on the Overstock website or any other website.[2]

Plaintiffs now bring this motion for contempt against Castaneda, arguing that she has failed to comply with the preliminary injunction. They seek sanctions – coercive and compensatory – against Castaneda and further request costs and fees associated with making this motion. For the following reasons, their motion for contempt is granted in part and denied in part, and their request for costs and fees is denied. Castaneda is directed to pay $5,000 in sanctions to the Court. If at any time in the future she is found to have violated the terms of the preliminary injunction, she will be fined $1,000 for each day that the order is violated. She is also directed to compensate plaintiffs for any profits made from

---

[1]    *See* 10/31/08 Preliminary Injunction ("Preliminary Injunction") ¶ 2.

[2]    *See id.* ¶ 1.

the sale of items that were marketed in violation of the preliminary injunction.

## II.    BACKGROUND

After hearing defendants' counsel make repeated representations to the Court that Castaneda and Overstock were no longer engaging in infringing conduct, only to be presented evidence by plaintiffs' counsel that this was false, the Court decided sua sponte that the only way to ensure that defendants would cease all infringing conduct was to enter a preliminary injunction.[3]  In this way, the defendants would be subject to the contempt powers of this Court if they were later found to be engaging in the prohibited conduct.

Therefore, on October 31, 2008, after giving both parties the opportunity to comment on a proposed order,[4] this Court entered a preliminary

---

[3]     *See* Transcript of 10/24/08 Conference ("10/24/08 Tr.") at 10:5-8, 23 (THE COURT: "She hasn't stopped.  I need to have a motion to find her in contempt with serious, serious money sanctions here now.  She's ignoring this Court.  That's what I don't like.  If you really want to know what upsets the Court is being ignored . . . Why don't you submit an order?").

[4]     *See* 10/30/08 Email from Daniel Freeman, law clerk to Judge Scheindlin, to Louis Ederer, plaintiffs' counsel, and Scott Zarin, defendants' former counsel ("10/30/08 Email"), Ex. G to Declaration of Louis Ederer ("Ederer Decl."); 10/31/08 Email from Ederer to Freeman, copying Zarin, Ex. H to Ederer Decl. ("10/31/08 Ederer Email #1"); 10/31/08 Email from Zarin to Freeman, copying Ederer ("10/31/08 Zarin Email"), Ex. I to Ederer Decl.; 10/31/08 Email from Ederer to Freeman, copying Zarin and Matthew Salzmann, plaintiffs' co-counsel ("10/31/08 Ederer Email #2"), Ex. J to Ederer Decl.

injunction.  Among other things, the order enjoined Castaneda and Overstock from using plaintiffs' brand names, collection names, or product names on Overstock's website or any other website.[5]  It also enjoined defendants from using the words "knock off," "imitation," or other similar words to refer to plaintiffs or their trademarks, including in the marketing of "products previously described by defendants in their advertising or on their website using plaintiffs' names or their trademarks," on Overstock's website or any other website.[6]

On December 12, 2008, the Court received a letter from plaintiffs, presenting evidence that Castaneda had violated the terms of the preliminary injunction.[7]  The letter stated that after the Court's entry of the injunction, plaintiffs discovered that Castaneda had launched a new website called Blingjewelry.com.[8]  After reviewing this website, plaintiffs found twenty-four instances in which Castaneda had either used plaintiffs' collection names in the product descriptions or had used the words "knock off," "imitation," or other similar words when referring to products that had previously been linked to

---

[5]   *See* Preliminary Injunction ¶ 2.

[6]   *See id.* ¶ 1.

[7]   *See* 12/12/08 Letter from Ederer to the Court ("12/12/08 Letter"), Ex. M to Ederer Decl.

[8]   *See id.*

4

plaintiffs' products.[9]

At a conference on December 19, 2008, defendants' counsel argued that the references to terms such as "knock off" or "imitation" were used in the negative on the website and therefore were not used in violation of the injunction,[10] that in any case, the infractions cited by plaintiffs were "minor," and that "there [was] no reference to [David Yurman, Cartier, Van Cleef & Arpels, and Bulgari] on those websites *guaranteed*."[11]  Plaintiffs then presented evidence that the last representation was false.[12]  They submitted to the Court a print-out from the Blingjewelry.com website with the statement:  "We also offer a huge selection of other famous designer inspired jewelry for women, men, & even babies!  Some of our replica jewelry is inspired by Cartier, Gucci, . . . Bulgari/Bvlgari, . . . David Yurman, . . . Van Cle[e]f & Arpel . . . and other famous jewelry designers."[13]

---

[9]     *See id.*

[10]     *See* Transcript of 12/19/08 Conference at 9:8-15 (arguing that the preliminary injunction does not preclude Castaneda from marketing a product as "different from a designer lookalike.").  The transcript appears to have been mistakenly dated December 23, 2008.  However, plaintiffs' and the Court's recollection is that the conference took place on December 19, 2008.

[11]     *Id.* at 7:18-21 (emphasis added).

[12]     *See id.* at 16:12-21.

[13]     12/19/08 Print-out from Blingjewelry.com ("12/19/08 Print-out"), Ex. O to Ederer Decl.

After hearing the arguments of both parties, this Court allowed plaintiffs to make the instant motion.

## III.   LEGAL STANDARDS

### A.   Civil Contempt

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."[14]  A defendant may be held in civil contempt only where a plaintiff establishes (1) the order was "clear and unambiguous," (2) "the proof of non-compliance is clear and convincing;" and (3) "the defendant has not been reasonably diligent and energetic in attempting to comply."[15]  A defendant's conduct need not be willful in order for the defendant to be found in contempt.[16]

"[A] federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid."[17]

---

[14]     *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

[15]     *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008) (citations omitted).

[16]     *See id.*

[17]     *Drywall Tapers and Pointers of Greater New York, Local 1974 of I.B.P.A.*, 889 F.2d 389, 400 (2d Cir. 1989) (quoting *International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)).

Thus, the first element – that the order be "clear and ambiguous" – requires that the order "be specific in terms" and that it "shall describe in reasonable detail . . . the act or acts sought to be restrained."[18]  With respect to the second element, "the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred."[19]

Finally, regarding the third element, "[r]easonable diligence [] requires a party to develop and execute reasonable effective methods of compliance."[20]  However, [t]he court is not empowered to command, any more than it can pretend for itself to achieve, performance approximating perfection."[21] Although the Second Circuit has not been squarely confronted with the question of what constitutes "reasonable diligence," it has noted that "substantial compliance"

---

[18]     *Id.*

[19]     *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotations omitted).

[20]     *Zino Davidoff SA v. CVS Corp.*, No. 06 Civ. 15332, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008).

[21]     *Id.* at *5 (quoting *Aspira of New York, Inc. v. Board of Educ. of the City of New York*, 423 F. Supp. 647, 651 (S.D.N.Y. 1976)).  *Accord Dunn v. New York State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 1995) ("The failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt . . . .").

is the appropriate standard in evaluating noncompliance in a contempt case.[22]

### B.   Sanctions - Coercive and Compensatory

"The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged."[23]  "To the extent that a contempt sanction is coercive, the court has 'broad discretion to design a remedy that will bring about compliance.'"[24] Several factors must be considered in determining the amount of a fine, including (1) "'the character and magnitude of the harm threatened by continued contumacy;'" (2) "the 'probable effectiveness of any suggested sanction in bringing about [compliance];'" and (3) "the contemnor's ability to pay."[25]

If the purpose of the fine is compensatory and therefore would be paid to the other party rather than the court, "'the sanction should correspond at

---

[22]     *See Latino Officers Ass'n of the City of New York v. City of New York*, 519 F. Supp. 2d 438, 446 n.43 (S.D.N.Y. 2007) (citing *Juan F. By & Through Lynch v. Weicker*, 37 F.3d 874, 879 (2d Cir. 1994)).

[23]     *Paramedics Electromedicina Comercial, Ltda v. GE Medical Sys.*, 369 F.3d 645, 657 (2d Cir. 2004) (citations omitted).

[24]     *Id.* (quoting *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir.1982)).

[25]     *Id.* at 657-58 (quoting *Perfect Fit*, 673 F.2d at 57)).

least to some degree with the amount of damages.'"[26]  Where damages have not

been shown, a court may award "profits derived by the contemnor from violation

of a court order."[27]

## C.   Costs and Fees

"It is well settled in this Circuit that costs, including reasonable

attorneys' fees, may be awarded to the party who prosecutes a contempt motion as

an appropriate compensatory sanction for contumacious behavior."[28]  Courts have

awarded attorneys' fees for conduct sanctionable as contempt where it is found

that the contemnor engaged in "willful disobedience of a court order."[29]  "A

district court, having found willful contempt, [] need[s] to articulate persuasive

grounds for any denial of compensation for the reasonable legal costs of the victim

---

[26]    *Id.* at 658 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995)).

[27]    *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5-6 (2d Cir. 1989) (citing *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 455-57 (1932)).

[28]    *New York State Nat'l Org. for Women v. Terry*, 952 F. Supp. 1033, 1043 (S.D.N.Y. 1997) (citations omitted). *Accord Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) ("The district court [] may award attorney fees and costs to a victim of contempt.").

[29]    *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967). *Accord Terry*, 159 F.3d at 96 ("A finding that a con[t]emnor's misconduct was willful strongly supports granting attorney's fees and costs to the party prosecuting the contempt.").

9

of contempt."[30]

## IV.   DISCUSSION

### A.   Contempt

#### 1.   Brand and Collection Names

With regard to Castaneda's use of plaintiffs' brand and collection names, plaintiffs argue that they have established all three prerequisites to show that Castaneda should be held in contempt by this Court.  They assert that the preliminary injunction was sufficiently clear and unambiguous, the proof of Castaneda's non-compliance is clear and convincing, and Castaneda has not been reasonably diligent and energetic in attempting to comply with the preliminary injunction.[31]  I agree.

Castaneda does not – and indeed cannot – argue that the preliminary injunction was unclear or ambiguous with respect to the restriction of Castaneda's use of plaintiffs' trademarks.  The injunction specifically ordered defendants to refrain "*from making any use of plaintiffs' brand names, collection names*, and product names, or any other names or trademarks of plaintiffs, or any other

---

[30]     *Weitzman*, 98 F.3d at 719.

[31]     *See* Memorandum of Law in Support of Plaintiffs' Motion for an Order of Contempt Against Defendant Elena Castaneda ("Pl. Mem.") at 14-17.

references to plaintiffs, *whether on the website Overstockjeweler.com or any other website* or venue."[32]  In addition, the Court had asked for and had received comments from both parties on the preliminary injunction prior to entering the order.[33]  Nowhere in the comments from defendants' counsel did he indicate that certain parts of the preliminary injunction – which plaintiffs complain Castaneda has violated – were ambiguous.[34]

It is also clear that Castaneda failed to comply with the preliminary injunction when she launched a new website and used plaintiffs' brand and collection names when marketing her products.  Plaintiffs have submitted print-outs from Blingjewelry.com showing that Castaneda was still using plaintiffs' collection names to market some items.[35]  In addition, another print-out shows that Castaneda specifically referred to plaintiffs' brand names on the website.[36]

Finally, Castaneda's arguments that she was reasonably diligent and

---

[32]     Preliminary Injunction ¶ 2 (emphasis added).

[33]     *See* 10/30/08 Email; 10/31/08 Ederer Email #1; 10/31/08 Zarin Email; 10/31/08 Ederer Email #2.

[34]     *See* 10/31/08 Zarin Email.

[35]     *See* 12/10/08 Print-out from Blingjewelry.com ("12/10/08 Print-out"), Ex. O to Ederer Decl. (marketing products by referring to plaintiffs' collection names such as "Albion," "Cable Collection," and "Silver Ice.").

[36]     *See* 12/19/08 Print-out.

energetic in complying with the preliminary injunction is belied by her admission

that after the December 19, 2008 conference, she had contacted her "informational

technologies' consultant" and was then sent instructions on how to perform a

search of products.[37]  Castaneda conceded that a quick search of products using

these instructions yielded "seven offending references" that she then quickly

removed.[38]  In addition, while Castaneda attests that she and her employees

searched through approximately 3,000 item pages for offending references,[39] her

efforts cannot be considered reasonably diligent when plaintiffs were able to

perform a manual search of the website and identify the violating instances within

hours.[40]  While Castaneda argues that she has "substantially complied" with the

injunction because plaintiffs were only able to find five products with offending

---

[37]     1/29/09 Declaration of Elena Castaneda ("Castaneda Decl.") ¶ 36.

[38]     *Id.* ¶ 37.

[39]     *See id.* ¶ 25.

[40]     *See* 2/6/09 Declaration of Matthew Salzmann, plaintiffs' counsel, ¶ 5
(attesting that he had spent a "few hours viewing every page on the site" and had
identified the violations).  Castaneda has also submitted a "compliance diary" that
apparently documents her efforts to comply with the preliminary injunction. *See*
Court Order Compliance Diary, Ex. B to Declaration of Paul Millus, defendants'
counsel ("Millus Decl.").  However, the diary only summarizes efforts that were
expended to ensure that Overstock's website was compliant; there are no detailed
explanations in this diary regarding what was done to ensure that
Blingjewelry.com was also compliant.

12

references out of thousands of items on the website,[41] the ease with which she could have ensured no offending references renders this argument unpersuasive. I therefore hold Castaneda in contempt for violating the injunction.

### 2.    Use of "Knock Off,""Imitation," and Similar Terms

The same analysis, however, does not hold for Castaneda's other alleged violation. Plaintiffs contend that Castaneda also violated the preliminary injunction when she advertised certain products on Blingjewelry.com with phrases such as "while not a literal duplication of a Designer bracelet" and "while not a literal imitation of a designer watch" when referring to products previously marketed as replicas of plaintiffs' designs.[42] I disagree.

The preliminary injunction orders Castaneda and Overstock to refrain from using terms such as "knock off" and "imitation" when referring to plaintiffs or their trademarks or "concerning any products previously described by defendants in their advertising or on their website using plaintiffs' names or their

---

[41]    *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Contempt at 5 (arguing that the facts in this case are similar to the facts in *Zino Davidoff SA v. CVS Corp.*, *supra*, where the court held that CVS had been reasonably diligent and energetic in complying when, after a search of 6,200 retail stores in three months and an eradication of the offending products, only thirty-one such products were found to have been missed).

[42]    *See* Pl. Mem. at 14; 12/10/08 Print-out.

trademarks . . . ."[43]  The intention was to prohibit Castaneda and Overstock from infringing on plaintiffs' trademarks with respect to the marketing of any new products or from capitalizing from having previously linked certain products to plaintiffs' designs by advertising them now as "designer imitations."  The intention was not to preclude Castaneda and Overstock from ever using terms such as "knock off" and "imitation" again.

Indeed, when the Court first circulated a proposed preliminary injunction to both parties for comments, plaintiffs' counsel had suggested inserting the provision now in dispute.[44]  He explained that "[w]ith this addition, it will be clear that, for example, a product that was previously referred to on Defendants' website as a 'David Yurman imitation' [cannot] now once again be referred to as an 'imitation.'"[45]  What is clear from this explanation is that Castaneda cannot continue to benefit from plaintiffs' trademarks by referring to a product as a "designer imitation" that was previously marketed as a "David Yurman imitation."  However, neither this Court, defendants, nor plaintiffs – at the time the October 31 email was written – contemplated that using the word

---

[43]     Preliminary Injunction ¶ 1.

[44]     *See* 10/31/08 Ederer Email #1.

[45]     *See id.*

14

"imitation" in the negative without referring to plaintiffs at all would be considered a violation of the order. Because there is no "clear and convincing" evidence of non-compliance, plaintiffs' motion for contempt against Castaneda on this ground is denied.[46]

## B.    Coercive Sanctions

Having found Castaneda in contempt of the preliminary injunction, the next task is to impose an appropriate sanction. As discussed, Castaneda has had a history of falsely representing to this Court that she has ceased her infringing conduct. The preliminary injunction was entered as a course of last resort; the Court believed that the only way Castaneda would take the Court's instructions seriously was if she was threatened with future penalties for failing to comply. Castaneda nevertheless flouted the Court's order.[47] Without the

---

[46]    Even if Ederer's explanation in his email was interpreted to suggest that use of these terms in the negative would nevertheless be a violation of the injunction, this provision's lack of clarity regarding whether the use of such terms in the negative would be a violation renders this part of the injunction ambiguous.

[47]    The Court also notes the flippant responses of Castaneda's counsel at the December 19, 2008 conference. When confronted with the 12/19/08 print-out of Blingjewelry.com which mentions the brand names of plaintiffs, he had quipped that "[customers] never read the last page." 12/19/08 Tr. at 17:13. This statement was false because, as I pointed out, customers would certainly look at a page that also contained links to the shipping and return policies, the contact information of Blingjewelry.com, and a help page. See id. at 17:24-18:1. And in any case, counsel's response was beside the point.

imposition of sanctions, this Court has no doubt that Castaneda will continue to ignore this Court's orders.  Castaneda must therefore be sanctioned.

As for the amount of such sanctions, I am sensitive to Castaneda's need to maintain her small business.  However, I also recognize that in order for the sanctions to be effective at bringing about her compliance, the amount must outweigh the potential benefits to Castaneda of continuing to use plaintiffs' trademarks to market her products.  Therefore, I am imposing a $5,000 fine.  In addition, if Castaneda again violates the preliminary injunction, she will be fined $1,000 for each day that she violates the order.

### C.   Compensatory Sanctions

Plaintiffs have also requested compensatory sanctions equal to the amount of profits that Castaneda made on Blingjewelry.com while using plaintiffs' trademarks to market her products.  I agree that Castaneda should not retain any profits made while violating the injunction.  Castaneda is therefore ordered to submit information regarding profits made as the result of her contemptuous conduct.[48]  I reserve my decision on the amount of compensatory sanctions until

---

[48]     Plaintiffs submitted a list of sold items that were apparently marketed in violation of the terms of the preliminary injunction and sold on Blingjewelry.com.  *See* "Items Sold on Bling," Ex. S to Ederer Decl.  However, because some of these items may have been marketed using the words "duplication" and "imitation" in the negative – found not to be a violation of the

after I have received and reviewed this information.  Counsel must forward the
required information within ten (10) days of receipt of this Opinion and Order.

### D.    Costs and Fees

Although I have found Castaneda to be in contempt, I do not find her
violation of the injunction to be willful.  Plaintiffs found only five products that
were marketed in violation of the injunction out of thousands of products sold at
Blingjewelry.com.[49]  In addition, Castaneda has attested that she and her
employees had reviewed approximately 3,000 item pages to remove references
that might violate the injunction.[50]  While I find that Castaneda's efforts to comply
were not reasonably diligent, her failure to catch these remaining references was
not willful.  It is also significant that Castaneda has since removed these five
offending references.[51]  Because Castaneda's conduct was not willful and the
sanctions imposed are sufficient, the further imposition of costs and fees is
unnecessary.

---

injunction – Castaneda is ordered to recalculate the profits made.  The Court notes
also that the profit figure on the document, $142.97, is different from the profit
figure that plaintiffs are requesting, which is $217.96.

[49]    *See* 12/10/08 Print-out.

[50]    *See* Castaneda Decl. ¶¶ 25-26.

[51]    *See* 12/16/08 Print-out of Blingjewelry.com, Ex. E to Millus Decl.

17

## V.  CONCLUSION

For the foregoing reasons, Castaneda is ordered to pay $5,000 to the Court.  Castaneda is also ordered to submit information regarding profits made on products marketed in violation of the Court's October 31, 2008 Preliminary Injunction within ten (10) days of receipt of this Opinion and Order.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           February 23, 2009

18

## - Appearances -

**For Plaintiffs:**

Louis S. Ederer, Esq.
Matthew T. Salzmann, Esq.
Arnold & Porter LLP
399 Park Avenue
New York, New York 10022
(212) 715-1000

**For Defendants**:

Paul Felix Millus, Esq.
Snitow Kanfer Holtzer & Millus LLP
575 Lexington Avenue
New York, New York 10022
(212) 317-8500